JOHNSTON v. SHORTRIDGE *et al.*, *Appellants.*

1. **Unrecorded Deed**: SUBSEQUENT PURCHASER : NOTICE. One accepting a conveyance of land with knowledge of a prior unrecorded deed of trust takes subject to the latter conveyance.

2. ———— : CORPORATION : KNOWLEDGE OF OFFICERS. The knowledge of officers of a corporation of a prior unrecorded deed of trust, acquired while acting for themselves, in making a conveyance of the land from themselves to the corporation, will not be regarded as the knowledge of the latter.

3. ———— : KNOWLEDGE OF. The evidence held sufficient to support the finding of the trial court that the subsequent grantees in this case took with knowledge of a prior unrecorded deed of trust.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*B. E. Guthrie* and *Dysart & Mitchell* for appellants.

(1) The plaintiff in failing to register and record his mortgage was guilty of negligence so gross as to constitute fraud upon those subsequently dealing with and acquiring said property, and neither law nor equity will aid him as against such subsequent owners. And,

if plaintiff withheld said mortgage from record in order to give the grantors credit, as testified by Shortridge, one of plaintiff's witnesses, then plaintiff thereby waived all rights as against such subsequent purchasers. *Bank v. Housman*, 6 Paige, 526–7; *Blennerhassett v. Sherman*, 105 U. S. 100. (2) When Epperson and Shortridge sold the lands in question to the Missouri Coal & Mining Company, they were acting for themselves, and not for the company, and their interest was adverse to that of the company, and their knowledge of the unrecorded mortgage to the plaintiff was no knowledge or notice to the said Missouri Coal & Mining Company, although one of them was president and the other superintendent of said company. The instructions asked by defendants should have been given. *Lee v. Clarkson*, 3 Cent. Law Jour. 177; *Wickersham v. Chicago Zinc Co.*, 26 Am. Rep. 784; 18 Kan. 481; *Innerarity v. Bank*, 52 Am. Rep. 710; 139 Mass. 332; *Vest v. Michie*, 31 Am. Rep. 722; 31 Gratt. 149; *Bank v. Chase*, 39 Am. Rep. 319; 72 Me. 226; *Ins. Co. v. Bell*, 22 Barb. 54; *Appeal of Savings Bank*, 13 Cent. Law Jour. 132; *Savings Association v. Printing Co.*, 25 Mo. App. 642; *Draud v. Rohrer Man. Co.*, 9 Mo. App. 249; *Cornet v. Bertelsman*, 61 Mo. 118. (3) If the Missouri Coal & Mining Company was an innocent purchaser, that is to say, without notice, then all subsequent holders claiming by and through said Missouri Coal & Mining Company will be protected. *Anderson v. McPike*, 86 Mo. 293; *Campbell v. Laclede Gas Co.*, 84 Mo. 352. (4) The court should have granted a new trial on the affidavits of newly-discovered evidence. It was not simply cumulative evidence, and all came to the knowledge of the defendants since the trial.

*John T. Jones* and *J. F. Williams* for respondent.

(1) The judgment of the circuit court should be affirmed; because the deed from Shortridge and Ep-

person to the Missouri Coal & Mining Company, was made without any consideration, and without the consent or authority of said coal company. (2) The mortgage from said company to Macon Savings Bank was made without any authority of law, and the same was never authorized by said coal company. R. S., sec. 727. (3) The issue of the forty thousand dollars worth of bonds by the coal company and the deed of trust securing the same were wholly unauthorized. No meeting of the stockholders or directors had ever been held as provided by law. No notice had ever been given, nor were the stockholders even consulted about the matter. The bank never owned or held any of these bonds; they were in New York for sale and were obtained on Shepherd's order after the failure. And even if the banks did own them, or a part of them, they took them with full knowledge of plaintiff's deed of trust. (4) All these institutions were so intimately connected, were owned, managed, and controlled by the same men, their businesss so secretly managed for the interests of all, that each knew absolutely all about the workings of the other. The knowledge of any one man connected with any one of them was the knowledge of all. They were all air-tight concerns among themselves, about which the world knew nothing. (5) Each and every defendant below had no interest in the result of this litigation. (6) The affidavits filed in support of motion for new trial were all made by defendants, intimately acquainted with each other. All the defendants had been together a number; of times while this suit was pending, and if they did not talk it over they were almost criminally careless. They contained no newly-discovered testimony. The motion was properly overruled.

NORTON, C. J.—On the twenty-ninth day of April, 1872, plaintiff owned two hundred acres of land, de_

scribed in the petition, situate in Macon county, and on that day conveyed, by deed of general warranty, all said land to Eli C. Shortridge and Charles G. Epperson, which deed was not recorded till the ninth day of August, 1878. At the time said deed was made, said Shortridge and Epperson, to secure to plaintiff two notes for the balance of the purchase money, amounting to $4,140, executed a deed of trust conveying the same land. This deed of trust was never recorded. On the tenth of January, 1873, said Shortridge and Epperson conveyed said land, by deed of general warranty, to the Missouri Coal & Mining Company, a corporation duly organized under the laws of this state. This deed was recorded on the twenty-fourth of August, 1878. On the twenty-fourth of August, 1878, the said Missouri Coal & Mining Company, gave a deed of trust on said lands to R. A. Malone, as trustee for the Macon Savings Bank, to secure a loan of ten thousand dollars made by said bank to said company. This deed was recorded on the twenty-fourth of August, 1878.

On the thirty-first of April, 1881, the said Missouri Coal & Mining Company gave a second deed of trust to Ben Eli Guthrie, as trustee, to secure the payment of forty thousand dollars of bonds issued by the said company, which deed was recorded on the seventeenth of May, 1881. It is claimed that the larger portion of these bonds had been bought by the Macon Savings Bank and the remainder by the Farmers' & Traders' Bank. On the sixteenth of February, 1882, the said Macon Savings Bank and Farmers' & Traders' Bank failed in business and made an assignment for the benefit of creditors. In May, 1882, suit was commenced to foreclose said deeds of trust, in which final judgment was tendered at the May term, 1882, of the Macon county circuit court, and said land ordered to be sold by special commissioners, who sold the same and reported the same to the said circuit court at its August

term, 1882; which was by said court affirmed and the proceeds distributed to the said two banks according to their respective interests. At said sale the land was bought by Thomas Wardell, who is not made a party in this suit.

The plaintiff commenced this suit to foreclose his unrecorded deed of trust on the twentieth of July, 1882, and on the eighth day of February, 1883, filed an amended petition adding other parties and a second count on another note. It is admitted, in the petition filed by plaintiff, that his deed of trust was never recorded, but he seeks to conclude the Missouri Coal & Mining Company, and the two banks, on the ground that they took their respective conveyances with knowledge of his unrecorded and outstanding deed of trust. On the trial the court gave a general judgment for an unpaid balance on the notes against said Shortridge and Epperson, and directed a sale of the lands for the payment thereof, from which the defendants have appealed to this court.

The vital question involved in this case is, does the evidence show that the Missouri Coal & Mining Company, the Macon Savings Bank, secured by the deed of trust to Malone, as trustee, the Farmers' & Traders' Bank and the Macon Savings Bank, the beneficiaries under the evidence in the deed of trust made to Guthrie, had notice at the time the respective conveyances were made to "them of the unrecorded deed of trust given to plaintiff to secure the notes sued on. If they had such notice the judgment must prevail; if they did not have it, the judgment is wrongful in decreeing a sale of the land to pay it.

It is shown by the evidence that, on the tenth of January, 1873, when the conveyance was made to the Missouri Coal & Mining Company by Epperson and Shortridge, Epperson was president, and Shortridge secretary of the company, both of whom had knowledge

of plaintiff's deed of trust, because they were the grantors. But, inasmuch as in making the sale to the mining company, they were acting for themselves and their interests adverse to said company, their knowledge of the unrecorded deed of trust, acquired, while not acting for the bank, but for themselves, was not the knowledge of the said company. *Innerarity v. Merchants' National Bank*, 139 Mass. 332; *Fairfield Savings Bank v. Chase*, 72 Maine, 226; *Wickersham v. Chicago Zinc Co.*, 18 Kan. 481; *Savings Association v. Printing Co.*, 25 Mo. App. 643. But the court refused to give an instruction, asked by defendants, enunciating the above principle, thereby indicating that the case was tried on the theory that such knowledge of Epperson and Shortridge of plaintiff's unrecorded deed was knowledge on the part of the coal company. Still, if we regard this as an equitable proceeding, and there is other evidence sufficient to charge the coal company as well as the banks with notice, the judgment must be sustained. We are of the opinion that the evidence before the court was sufficient for that purpose.

Plaintiff testified as follows: "I sold Shortridge and Epperson the two hundred acres of land in question, and made them a deed therefor, and took a deed of trust and two notes from them. I have not the deed of trust. It is lost. I left it in the Macon Savings Bank for safe keeping. Did not record it. Epperson was president, James B. Malone was cashier, of the bank at the time. * * * Malone was managing the bank at the time the deed of trust was executed and delivered to me, and he knew that I held it. I know that he knew it, because I had talked with him about it. He made some of the payments on those notes himself. * * * I am satisfied Malone has known of the deed of trust ever since it was executed. He is the man I first left it with in the bank, and was the manager until its failure in 1881." On cross-examination: "I took it to the bank and handed

it to Malone, the cashier, for safe keeping. I was on my way to Howard county at the time, and intended to get it when I came back. I intended to get it, but kept neglecting from time to time to take it away. * * * Malone made one or two payments on the note himself, and all of them were made in the bank."

E. C. D. Shortridge, one of the defendants, testified the same as Johnston in reference to the purchase of the land by himself and Epperson, the execution of the deed of trust and notes, and said that "Epperson and myself sold and conveyed, January 10, 1873, the land we got of plaintiff to the coal company. At the date of the deed and of its record, Epperson was president, and I was secretary, of the company. J. B. Malone was treasurer, and each of us, together with A. L. Shortridge, were directors, and Epperson continued president from the time of the organization down to the time of the assignment, in 1881 or 1882. Malone was treasurer for the same period, and I was secretary till 1881, with the exception of one year. I was also general superintendent from the organization until about the year 1881. This deed of trust above mentioned was not recorded, and my understanding was that Johnston left it with the Macon Savings Bank for safe keeping. The Macon Savings Bank and the Missouri Coal & Mining Company knew of the existence of this deed of trust and of the notes, and that they were unpaid. I know that Epperson, Malone, A. L. Shortridge, and myself have talked together concerning these notes and deed of trust. The Macon Savings Bank and Missouri Coal & Mining Company were conducted and managed by the same interest and the same parties except myself. There were shareholders in each that had no interest in the other."

On cross-examination the witness, in reply to the question, why Johnston did not record his deed of trust, said because Epperson requested him not to have it re-

corded, and that Epperson gave as a reason for not wanting it recorded, that it would show °an incumbrance in case we wanted to dispose of the land, and that as well as he could remember Johnston agreed not to record it. It may be stated here that Johnston, on being recalled, denied that there was any understanding or agreement that the deed of trust was not to be recorded. Shortridge was asked, on his further cross-examination, whether at the time of making the deed to the Missouri Coal & Mining Company, he specifically informed the directors of said company of the deed of trust, and in reply, he said : "At the time of making and delivering that deed the only resident and managing directors of the coal company were Epperson, Malone, and myself. James Carr was a director, residing in St. Louis, and there was a vacancy in the fifth director. No other director knew anything about making the deed except Epperson, Malone, and myself. There was nothing said about the Johnston deed of trust at that time, to the best of my knowledge and recollection." He further stated that, "afterwards I knew there was a deed of trust made to the Macon Savings Bank. I was not present at the making of the deed of trust, and do not know whether the Johnston deed of trust was spoken of at that time or not." After stating about payments made on the note, he stated : "I was present when the deed of trust was made to the Macon Savings Bank in 1878. At that time Epperson and myself made the deed to the coal company to increase the security for the purpose of this loan. I objected to making the deed of trust to the Macon Savings Bank for the reason that the land had not been paid for, and on account of Johnston's interest, but both Malone and Epperson said Johnston would be protected. We had made the deed to the coal company, but it had not been put on record, on account of Johnston's deed of trust, and that it had not been paid for in full. We held the deed till it was recorded in 1878. Epperson,

Malone, and myself were the only officers of the coal company, and the only persons present, in 1878, at the making of the deed of trust to Macon Savings Bank." Witness was then asked : "When you stated, in your examination in chief, that Epperson, Malone, A. L. Shortridge, and yourself knew of the existence of the deed of trust to Johnston, and that it was not paid in full, do you mean to be understood that they knew of it before, and at the time of, the execution of the deeds from the Missouri Coal & Mining Company to the Macon Savings Bank, and Ben Eli Guthrie ?" To this the witness answered, "I do."

Wilson, assignee, testified that the Farmers' & Traders' Bank was a partnership run under that name, and that the partners were Epperson, Malone, and Shepherd.

The evidence further tended to show that the coal company, the Macon Savings Bank, and Farmers' & Traders' Bank were closely connected ; that the chief owners of these institutions were the same, and that they were managed and controlled, in the main, by the same officers.

The evidence of plaintiff and Shortridge, above detailed, proves that, at the time Epperson and Shortridge conveyed the land in question to the Missouri Coal & Mining Company, Malone, who, at that time, was both treasurer and director of said coal company, had notice of plaintiff's deed of trust, and the same evidence proves that Malone, as cashier and manager of the Macon Savings Bank, had knowledge of said deed, when the deed of trust was made to R. A. Malone to secure said bank in a loan made to the coal company, and it also proves that both Malone and Epperson, who were partners with Shepherd in the Farmers' & Traders' Bank, had knowledge of plaintiff's deed, when the deed of trust was made to Ben Eli Guthrie, to secure the payment of forty thousand dollars of bonds issued by the

coal company. If credence is to be given to plaintiff and Shortridge (and they stand before us unimpeached) their evidence was sufficient to justify the trial court in finding that the coal company, as well as the two banks, took with notice of plaintiff's unrecorded deed.

It is also stated, as one of the grounds in the motion for new trial, that, since the trial, defendants had dis_ covered new and important evidence, and the affidavits of Malone and Epperson were filed with the motion, one of them to the effect that seven hundred dollars had been paid on the note, which had not been credited, and another to the effect that the deed of trust to plaintiff had never been delivered to him. The counter-affidavit of Mr. Jones was filed, stating facts showing a want of diligence on part of defendants in discovering and procuring the evidence of said Malone and Epperson.

The question as to whether any balance was due on the notes, as well as the execution and delivery of the deed, was put in issue by the pleadings, and the affidavit of Jones shows that, prior to the trial, defendants and their counsel had conferred with Jones and Epperson and had opportunities for several days to ascertain what they knew about the case. The evidence discovered was cumulative in its character, and, for this reason, as well as for the further reason that no diligence to procure it is satisfactorily shown, it constituted no ground for a new trial.

Judgment affirmed, in which all concur.