BENTON *et al.*, *Appellants*, v. GERMAN-AMERICAN NATIONAL BANK.

### Division One, May 28, 1894.

1. **Bank:** DISCOUNT OF NOTE: PURCHASER FOR VALUE. Where a bank discounts a note for a person and places the proceeds thereof to his credit it is a purchaser for value, though it may afterwards apply such proceeds to the reduction of such person's indebtedness to the bank.

2. **Corporation:** OFFICER: NOTICE. Knowledge which comes to an officer of a corporation through his private transactions and beyond the sphere of his official duties is not notice to the corporation.

3. ——: ——: ——. Where one is an officer of two corporations and they have business transactions with each other, the knowledge of the common officer can not be attributed to either corporation in a matter in which he did not represent it.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*John L. Wheeler* and *Karnes, Holmes & Krauthoff* for appellants.

(1) The note was without consideration. (2) The note was procured by fraud and the bank is chargeable with knowledge thereof. A bank is bound by the knowledge of any director who takes part in the discount of a note presented to the bank for discount as to equities affecting the liability of the maker of the note. *Atlantic Mills v. Indian Orchard Mills,* 147 Mass. 268; 1 Mor. Priv. Corp., sec. 540, par. *a., b.* and *c.*; Wade on Notice [2 Ed.], secs. 675, 676; 1 Am. and Eng. Encyclopedia of Law, p. 423; *Bank v. Christopher,* 40 N. J. L. 435; *Bank v. Neil,* 10 Bush. 54; *Hart v. Bank,* 33 Vt. 252; *Muller v. Insco,* 58 Vt. 113; *Hovery v. Blanchard,* 13 N. H. 145; *Patent v. Ins. Co.,* 40 N. H. 375; *Bank v. Hornbeck,* 29 Minn. 322; *Irmaty*

*v. Bank,* 139 Mass. 332; *Willard v. Denise* (N. J. Err. & App.), 26 Atl. Rep. 29.

*Haff & Van Valkenburgh* for respondent.

(1) The note was not without consideration. (2) The bank had no notice of any infirmity in the paper. *Wilson v. Bank,* 7 Atl. Rep. (Pa.) 145; *DeKay v. Hackensack Water Co.,* 11 Stewart (N. J. Eq.), 158; *Bank v. Christopher,* 11 Vroom (N. J. Law), 435; *Barnes v. Gas Light Co.,* 12 C. E. Greene (N. J. Eq.), 33; *Bank v. Neass,* 5 Denio (N. Y. Sup. Ct.), 329; *In re European Bank,* L. R., 5 Ch. App. 358; 2 Randolph on Commercial Paper, par. 1004, p. 698; *Savings Association v. Printing Co.,* 25 Mo. App. 642; *Brass Company v. Webster Glass and Queensware Company,* 37 Mo. App. 145; *Johnston v. Shortridge,* 93 Mo. 227; *Bank v. Savery,* 82 N. Y. 291; *Fisher v. Murdock,* 13 Hun (N. Y.), 485; Angell & Ames on Corp. [11. Ed.], pars. 307–309, p. 336, *et seq.; Bank v. Bank,* 10 Otto, 239, *loc. cit.* 245. (3) The law is settled that knowledge which comes to a corporation officer, through his own private transactions, and beyond the range of his official duties, is not the knowledge of the corporation and attaches to the latter no responsibility by way of notice. *State Savings Ass'n v. Printing Co.,* 25 Mo. App. 648; *Johnston v. Shortridge,* 93 Mo. 227; *Manhattan Brass Co. v. Webster, etc.,* 37 Mo. App. 155.

BRACE, J.—This is a bill in equity to cancel a negotiable promissory note and to recover interest paid thereon, against the holder, charging that the note is without consideration, and was procured by fraudulent misrepresentations, of which the defendant had notice.

On the sixth of July, 1889, W. F. Wyman was defendant's cashier, and also secretary and treasurer

of the Kansas City Glue and Fertilizer Company.    The company was largely indebted to the bank.    The evidence tends to prove that on that day the said Wyman as secretary and treasurer of the company, agreed to sell the plaintiff, R. E. Benton, and he agreed to buy, fifty shares of the capital stock of the company of the face value of $5,000, for $3,000, to be paid for by the negotiable promissory note, at ninety days, of himself and one O. H. Brown, for that amount with interest added, payable to the said Wyman as cashier of the bank, secured by the deposit as collateral of the certificates of certain shares of stock in the Kansas City Varnish Company, and of the certificates for the said fifty shares of stock of the Glue and Fertilizer Company, to be thereafter issued, with the understanding that said note was to be discounted by the bank for the benefit of said company.    The note was so drawn and afterwards on the eighth of July, 1889, was discounted by the bank and the proceeds placed to the credit of the company on the books of the bank.

At maturity, on the seventh of October, 1889, this note was taken up and a new note given, signed by the same parties with the same recitals as to collaterals, payable to W. F. Sargent, cashier of said bank, at ninety days, for the same amount with interest added. Up to this time, the certificate of stock to Benton had not been issued, and the deposit of that stock consisted merely of the recital in the note: "Certificates No.'s ——— fifty shares of stock of the Kansas City Glue and Fertilizer Company, being ten shares each."

On the twentieth of December, 1889, certificate number 65 for fifty shares of the capital stock of the company was issued to Benton by the company, by whom it was thereafter indorsed and delivered to the bank, and held as collateral.    At the maturity of the last mentioned note, on the eighth of January, 1890,

the same was taken up and a new note given, payable at four months to J. G. Strean, cashier, at the bank, for the same amount with interest added, signed by Benton and Brown as before, and also by the wife of R. E. Benton, his coplaintiff, Nellie E. Benton, in which it was recited that said certificate of stock number 65 is deposited as collateral security.

This note, at maturity, was renewed by a like note signed by the same parties for thirty days, dated May 11, 1890, which at its maturity was again renewed by a like note dated June 13, 1890, signed by the same parties, payable ninety days after date, and this seems to be the note which the plaintiffs seek to have cancelled in this action, commenced at some time after its maturity—but when, this record does not show—in which a final hearing on the merits was had in the Jackson circuit court, on the fifth day of December, 1891, and the plaintiff's bill dismissed, and judgment rendered against them for costs, from which they appeal.

I. The court made no finding of the facts and gave no declarations of law, consequently the particular ground upon which the bill was dismissed does not appear. It is perfectly clear, however, upon the face of the evidence that the plaintiff, R. E. Benton, was not induced to enter into the contract of July 6, 1889, with Wyman, in pursuance of which he executed his note of that date, by any false and fraudulent misrepresentations of Wyman, of any *fact* affecting the value of the stock of the company which he was to get for his note, and equally as clear that his wife, the plaintiff, was not induced by any such misrepresentations to attach her name to the note of January 8, 1890, and the subsequent notes in renewal thereof. This is virtually conceded in the argument in this court, but it is insisted that the original note was without consideration, of which fact the bank had notice at the time it discounted

it, and that the bank gave nothing for it. Hence the plaintiff's bill ought to have been sustained. So far as the evidence shows, the note was discounted by the bank in the usual and ordinary way in which such business is done, and the net proceeds passed to the credit of the company on the books of the bank, the bank thereby giving full value for the security whether thereafter those proceeds were applied directly in reducing the indebtedness of the company to the bank or paid out on its check over the counter.

There is nothing in the contention that the bank did not give value for the note. In support of the other contention the plaintiffs introduced the articles of incorporation showing that the company was incorporated in July, 1888, "with a capital stock of $50,000, divided into five hundred shares of $100 each, the whole amount of said stock having been subscribed for, and one-half thereof actually paid up;" and then introduced in evidence the stubs of the stock book of the company showing that prior to the sixth day of July, 1889, there had been issued to divers persons certificates of stock for four hundred and fifty-eight shares of the capital stock of the company, which had not been canceled or recalled, and that on the twentieth day of December, 1889, the same day on which the certificate of fifty shares of stock was issued to Benton, certificates of stock were issued, including his, for three hundred more shares, making, in all, seven hundred and fifty-eight shares issued, as appears by the book, and contend that, although on the twenty-eighth of October, 1889, at a meeting of the stockholders, held in pursuance of law, an increase of the capital stock to $75,000, was authorized by the votes of a majority of the stockholders, yet their action not having been certified to the secretary of state as required by law, and his certificate evidencing such increase not

having been issued, such increase of stock was never lawfully made, and, consequently, at the time the agreement was made, the company did not have original stock subject to its disposal, which could be issued in discharge of the agreement, of which fact Wyman had knowledge; and he was either guilty of a fraud, in selling that which he did not have, or he intended the agreement to be discharged out of the increased stock to be thereafter issued, and in either view of the case, although a certificate for fifty shares of the stock was issued in December, 1889, by the company, and accepted by Benton, it was part of an over issue of stock not authorized, represented no valid stock, and the consideration of the note, therefore, failed; that the knowledge of Wyman was the knowledge of the bank, and that the plaintiffs have the same equities against the note in its hands, that they would have against it in the hands of the company.

To meet this argument the bank introduced evidence tending to prove that, although the stub book shows that, at the time of the agreement, certificates for four hundred and fifty-eight shares of the original stock had been issued, there were in fact only then two hundred and eight shares outstanding, one hundred of the shares evidenced by the stub book having been written, but held by the company to be delivered to the parties who had subscribed and given their notes therefor, only on condition that the notes were paid at maturity, and those notes, long past due, not having been paid, these shares were at the disposal of the company and could be applied to the discharge of the agreement. That the other one hundred and fifty shares had been written and delivered to the persons therein named, officers and stockholders of the company, to be sold for the company, but had not been placed, so that, in fact,

at the time of the contract and until December 20, 1889, when plaintiff's certificate was issued, the company had under its control shares of the original capital stock that could be applied to the discharge of the agreement, and if these two hundred and fifty shares be deducted from the number of shares to which it was increased by that issue, viz., seven hundred and fifty-eight, there was only an over issue of eight shares, and, as of that issue only forty shares had in point of actual time been issued before the plaintiff's was issued, his certificate of fifty shares was within the limit of the number of shares, five hundred, which the company at that time was authorized to issue. How this question of fact was determined by the trial court we have no way of ascertaining; if in favor of the defendants, then the plaintiffs got the precise consideration for which they gave their note, and they have no reason to complain, if, as a matter of fact, the court found that these two hundred and fifty shares did not belong to the company and were not subject to its disposal when the plaintiff's certificate was issued, then, four hundred and fifty-eight shares of the stock having been issued before the December issue of 1889, and forty shares of that issue before the plaintiff's certificate, there were already issued certificates for four hundred and ninety-eight shares, when his certificate was issued, and the stock was, except as to two shares, part of an over issue.

What the equities might be by reason of that fact between the plaintiffs and the company in respect of the note given for that stock, if that note were in the hands of the company, we find it unnecessary to determine in this case. All the evidence tends to prove that the agreement between Wyman and Benton was a fair, frank and open contract, entered into in the utmost good faith by both parties, both believing at

the time that the stock of the company at sixty cents
on the dollar was a good investment, a belief so strong
that Wyman and other officers and stockholders of the
company were willing and were then investing their
money in it at that price; that, in the negotiation for
the sale and future delivery of the stock, Wyman repre-
sented, and only represented, the company; that the
plaintiff relied wholly upon him as the secretary and
treasurer of the company for the delivery of the stock,
for which he had contracted. To that transaction, the
bank was an entire stranger and in it its cashier neither
represented, nor undertook to represent, the bank.
Whatever may have been his knowledge of the condition
of the company's stock account or of its affairs generally,
that knowledge can not be imputed to the bank, when
subsequently he came to procure for that company a
discount of paper acquired in his negotiation for the
company which he represented.

It seems to be well settled law in this state that
knowledge which comes to an officer of a corporation,
through his private transactions, and beyond the range
of his official duties, is not notice to the corporation.
*State Sav. Ass'n v. Printing Co.*, 25 Mo. App. 643;
*Bank v. Schaumburg*, 38 Mo. 228; *Manhattan Brass Co.
v. Co.*, 37 Mo. App. 145; *Hyde v. Larkin*, 35 Mo. App.
366; *Johnston v. Shortridge*, 93 Mo. 227; *Bank v. Lovitt*,
114 Mo. 519.

In this last case, which is quite analogous to the
case in hand, we held that "an officer of a banking
corporation has a perfect right to transact his own
business at the bank of which he is an officer, and in
such a transaction his interest is adverse to the bank,
and he represents himself and not the bank. The law
is well settled that, when an officer of a corporation is
dealing with it in his individual interest, the corpora-
tion is not chargeable with his uncommunicated knowl-

edge of facts derogatory to his title to the property which is the subject of the transaction.'' A corollary of the foregoing proposition is that, if a person is an officer of two corporations, and these corporations enter into dealings with each other, the knowledge of the common officer can not be attributed to either corporation in a transaction in which he did not represent it. 1 Morawetz on Priv. Corp., sec. 540c.; *Bank v. Loyhed*, 28 Minn. 396; *De Kay v. Hackensack Water Co.*, 38 N. J. Eq. 158; *Wilson v. Bank*, 7 Atl. Rep. 145.

It appears affirmatively from the evidence that no loans were made by the bank without the sanction of the discount board. Of whom that board was composed, the evidence does not show. But there was no evidence tending to show that Wyman communicated to the board or any other officer of the bank any knowledge he may have had in regard to the company, its stock account or its affairs, or of this transaction with Benton, or that, in the matter of discounting the note, he occupied any other relation than that of the representative of the company for whose benefit the discount was obtained. His own interest as an officer and a stockholder in the company placed him in an antagonistic position to the bank in this matter, and its rights as a purchaser for value in the regular course of business, of the security in question, can not be affected by his acts or dealings with the plaintiffs as secretary and treasurer of the company. See other authorities cited by defendant's counsel in their brief. Also *Bank v. Christopher*, 40 N. J. Law, 435; *Innerarity v. Bank*, 139 Mass. 332, cited by counsel for the plaintiffs. The court committed no error in dismissing the bill, and the judgment is affirmed. All concur.