## SCHOOL DIST. OF CITY OF SEDALIA, MO., v. DE WEESE.

(Circuit Court, C. D. Missouri, W. D. March 22, 1900.)

1. CORPORATIONS—NOTICE—KNOWLEDGE OF OFFICER.

A bank is not chargeable with notice of the misappropriation of money by its cashier, acting as agent for a third party, in his individual capacity, although the cashier was in fact sole manager of the bank, and the money was, in the first instance, deposited to its credit with a correspondent, when it was immediately transferred on the books to the credit of the cashier, and checked out by him; nor is it liable to the principal for such money, when it realized no benefit therefrom.

100 F.—45

**2. LIMITATION—ACCRUAL OF CAUSE OF ACTION—FRAUD OR CONCEALMENT.**

Under Rev. St. Mo. 1889, § 6789, which provides that limitation shall not run against an action so long as its commencement is prevented by fraud, concealment, or other improper act, the act which will prevent the statute from running must be that of the defendant; and the fact that a plaintiff is ignorant of facts necessary to enable him to bring a suit, through the fraud or concealment of one for whose acts the defendant is not responsible, will not avail to defeat a plea of limitation.

**3. SAME—LACHES OF PLAINTIFF.**

The cashier of a bank, as agent for a school district, sold its refunding bonds, and took up its old bonds, but, instead of surrendering them to the district, resold them, and converted the proceeds to his own use; telling the directors of the district from time to time that he had been unable to procure the old bonds. The directors knew by whom such bonds had previously been owned, but made no inquiry from such person, and did not learn the facts until some three years afterwards, and after the failure of the bank; and, nearly six years after the conversion of the bonds by the agent, they brought suit against the receiver to charge the bank with liability therefor. *Held*, that their failure to sooner learn of the facts was not chargeable to any fault of the bank, but to their own negligence, and the improper conduct of the cashier as their agent, and that limitation commenced to run in favor of the bank and its receiver from the date of the conversion.

**4. EVIDENCE—ADMISSION BY RECEIVER—ADMISSIBILITY AGAINST SUCCESSOR.**

Allegations in a pleading by a receiver of a national bank against the directors, charging them with negligence in permitting the cashier to manage the affairs of the bank without supervision, are not admissible against the successor of such receiver, in an action against him by a third party to establish a liability of the bank; the subject-matter of the two suits, as well as the parties, being different.

This was an action at law against the defendant, as receiver of a national bank, to charge the bank with liability for the conversion by its cashier of bonds of the plaintiff.

Charles E. Yeater and John H. Bothwell, for plaintiff.
William S. Shirk, for defendant.

PHILIPS, District Judge. This cause has been submitted to the court without the intervention of a jury. In 1883 the school district of Sedalia, Mo., issued bonds in the sum of $30,000, to run for 20 years, redeemable at the option of the city at any time after 5 years. In 1889 the school district elected to redeem said bonds by the issue of funding bonds at a less rate of interest. These funding bonds were accordingly executed and issued in due form, and were placed in the hands of James C. Thompson to sell, and out of the proceeds thereof to redeem the old bonds. Thompson made a sale of the new bonds, but, instead of redeeming the old bonds with the proceeds thereof, he appropriated the proceeds to his own use; and, instead of taking up the old bonds and turning them over to the treasurer of the school board after he had obtained them by purchase from the holders, he resold part of the bonds to Marshall & Co., Eastern capitalists, for whom he was acting as agent in loaning money on real estate and other securities. These sales to Marshall & Co. were as follows: $5,000 on May 26, 1893, for $5,020.83; $5,000 on June 2, 1893, for $5,025; $3,000 on June 13, 1893, for $3,023.50; $2,000 on June 27, 1893, for $1,960. Thomp-

son during the time of these transactions was the active cashier of the First National Bank of Sedalia, Mo. The school district, having been compelled to pay these old bonds thus acquired by Marshall & Co., brought this action against the receiver of said bank to recover the amount thus received by Thompson on said bonds, on the theory that the bank received the proceeds with knowledge of the fact of Thompson's dereliction, and was guilty of conversion. The defendant pleads in defense thereof, first, that the bank was not guilty of such conversion; that it did not receive and enjoy the proceeds of the resale of said bonds; and that the cause of action, if any, is barred by the statute of limitations.

The court finds from the facts and circumstances in evidence that Thompson acted as the agent of the school board in effecting the sale of the funding bonds and taking up the old bonds. It also finds that, in negotiating and selling the old bonds to Marshall & Co., Thompson was acting in his individual capacity, and not as cashier of the bank, and that the bank had no knowledge whatever of the acts and conduct of Thompson in those transactions, unless it can be maintained, as matter of law, that, from the mere fact of Thompson at the time being cashier and active managing officer of the bank, his knowledge is to be imputed to the bank. The evidence shows that, under the direction of Thompson, Marshall & Co. remitted the proceeds of the first two sales to the Seaboard National Bank of New York, to the credit of the First National Bank of Sedalia, and that thereupon Thompson made an entry on the books of the bank showing a charge to said Seaboard National Bank with the proceeds of such sales. In case of the third and fourth sales, Thompson drew upon Marshall & Co. therefor, and, by indorsement, directed the National Bank of the Republic of St. Louis to place the amounts to the credit of the First National Bank of Sedalia, which was done accordingly. And the First National Bank of Sedalia, by entry on its books, charged the amounts to the National Bank of the Republic. Had the transaction ended here, leaving these proceeds to the credit of the First National Bank, there would be tangible ground for holding that, the bank having received the proceeds thereof without consideration, the plaintiff should recover therefor; but the evidence shows, beyond question, that, as soon as the proceeds of these different sales were thus passed to the First National Bank of Sedalia, Thompson transferred them to his own individual account. This fact is clearly established by entries in the books of the bank, as also deposit slips and entries made in Thompson's individual pass book, put in evidence, from which the inference is clear that the credit received by the First National Bank for the proceeds was merely a matter of jugglery by Thompson, and passed over at once to the use and benefit of Thompson; and the practical result of the transactions was that Thompson got the benefit thereof, and not the bank. The bank had no right thereto. It was not the transaction of the bank. It paid no consideration therefor, and, as between it and Thompson, it was not entitled thereto; and, in contemplation of law, the transaction had no other legal effect than if the bank had collected the proceeds directly from Marshall &

Co., and, on the day it took credit on its books therefor, had passed the same over to the credit of Thompson. The only permissible theory, as applied to the instance of this case, upon which the plaintiff could hold the bank for the proceeds of the bonds, would be that the bank received the same and mingled it with its own property, thereby enlarging its assets and receiving the benefit thereof. Even if the bank did receive a temporary credit for these proceeds with its exchange banks in New York and in St. Louis, it immediately accounted therefor to Thompson, the rightful owner as between it and Thompson. So that if the plaintiff were undertaking, by bill in equity, to follow the proceeds of these funds into the assets of the bank, it would utterly fail, because the books would show, as the other evidence, that the funds were transferred to the individual account of Thompson, who alone got the benefit thereof.

The evidence shows that, as to the first block of bonds, the proceeds were paid by Thompson to the Continental National Bank upon his individual note to the bank. This is shown by his own check, and the draft bought with it, and the credit indorsed on the back of his individual note to said Continental National Bank. As to the proceeds of the second sale, of $5,025, the evidence does not show what Thompson did with it. His individual account on the books of the bank shows that he drew it out of the bank on his private account. It is true that when Thompson drew for the amount of the proceeds on Marshall & Co. in favor of the National Bank of the Republic, which drafts were paid to the National Bank of the Republic, to the credit of the First National Bank of Sedalia, the exchange account of the First National Bank of Sedalia with the National Bank of the Republic was overdrawn. But this condition of the account between the two banks was only temporary. It vacillated thereafter. But, as already shown, it was not the intention of Thompson to turn the proceeds of these sales over to the First National Bank, but to transfer the credit thereof in his own favor, which he at once carried out, as shown by the books of the bank, so that every dollar of these sales went to the benefit of Thompson. There was nothing whatever on the books of the bank when they passed into the hands of the receiver, in 1894, to give any notice to the bank, as such, as to the source of the transactions between Thompson and Marshall & Co., to affect the bank with notice that it was the proceeds of a wrongful conversion by Thompson of said school bonds. The contention of plaintiff's counsel is that the knowledge which Thompson had should be imputed to the bank, because he was the cashier of the bank, and its active managing officer. The rule on this subject, as it exists in this state, is very succinctly stated by Judge Black in Bank v. Lovitt, 114 Mo. 525, 21 S. W. 825, as follows:

"It is a general rule that notice of a fact acquired by an agent while transacting the business of his principal is notice to the principal, and this rule applies to banking and other corporations as well as to individuals. It is the duty of the agent to communicate to the principal information thus acquired, which would affect the rights of the principal, and the presumption is that the agent has performed his duty in this behalf. If he has not, still the principal should be charged with notice of the existence of such facts thus coming to

the knowledge of the agent, because he selects his own agent, and confides to him the particular business. Story, Ag. § 140. But the reason of the rule ceases when the agent acts for himself, and not his principal, and the rule itself ought not to apply in such a case. Accordingly it has been held by this court that knowledge of an unrecorded deed acquired by officers of a corporation, while acting for themselves, and not for the corporation, will not be imputed to the corporation. Johnston v. Shortridge, 93 Mo. 227, 6 S. W. 64. An officer of a banking corporation has a perfect right to transact his own business at the bank of which he is an officer, and in such a transaction his interest is adverse to the bank, and he represents himself, and not the bank. The law is well settled that, when an officer of a corporation is dealing with it in his individual interest, the corporation is not chargeable with his uncommunicated knowledge of the facts derogatory to his title to the property which is the subject of the transaction. Tayl. Corp. (2d Ed.) § 210; 1 Wat. Corp. § 125; Frenkel v. Husdon, 82 Ala. 158, 2 South. 758; Wickersham v. Zinc Co., 18 Kan. 481; Barnes v. Gaslight Co., 27 N. J. Eq. 33; Innerarity v. Bank, 139 Mass. 332, 1 N. E. 282; Eyerman v. Bank, 13 Mo. App. 289; Bank v. Froman (Mo. Sup.) 31 S. W. 769; Bank v. Babbidge (Mass.) 36 N. E. 462; Bank v. Christopher, 40 N. J. Law, 435."

See, also, Benton v. Bank, 122 Mo. 339, 26 S. W. 975.

It would be a far-reaching and dangerous doctrine to establish, when the cashier of a bank, acting in his individual capacity, and for his own aggrandizement, receives in trust, as the agent of a third party, property or money, that because he is at the time cashier and active manager of the bank, and, as a mere matter of bookkeeping (done, doubtless, to cover up his own fraud), he first enters the proceeds on the books of the bank, to the bank's credit, and immediately passes the same to his own individual account, and forthwith checks the same out to his individual use, the bank should be affected with his guilty knowledge, and made to account for the fruit of his ill-gotten gains, when in point of fact the bank gained nothing in the end by the transaction. The bank in such case is not acting in privity with the agent of the third party. Thompson in these whole transactions was acting as the agent of the plaintiff, and not as the agent of the bank.

Even if this conclusion of the court can be successfully challenged, why is not the action barred by the statute of limitations? The original petition in this cause was filed on the 20th day of January, 1899. The cause of action, if any, against the bank, arose on the first sale on May 26, 1893; on the second sale on June 2, 1893; on the third sale on June 13, 1893; and on the last sale on June 27, 1893, or a day or two immediately thereafter,—more than five years prior to the institution of this suit. In the first petition plaintiff sought to avoid the operation of the statute of limitations by the following allegation:

"And, further, plaintiff states that it had no knowledge or notice of the fraudulent conversion or sale of said bonds by said Thompson as aforesaid, and did not discover the same, until after the failure of said bank, in May, 1894."

On demurrer to this petition this allegation was held to be insufficient to interrupt the running of the statute of limitations. School Dist. v. De Weese (C. C.) 93 Fed. 602. In the final amended petition the plaintiff makes more specific allegations in order to

meet this legal objection, the substance of which is that Thompson concealed from the school board the fact of his having received and converted said bonds, and that, because of his high reputation as a man of business and integrity in the community, the board relied implicitly upon his statement that he had not yet been able to obtain possession and control of the bonds. But the only evidence offered by plaintiff in support of these allegations, outside of the conceded good personal and business reputation of Thompson, amounts to nothing more than that on several occasions the treasurer of the school board, and perhaps other officers of the board, inquired of Thompson if he had yet received the bonds, and his answer was that he had not, and that he made some explanatory statement as to the difficulty of obtaining them. If it were conceded that this would be sufficient to stop the running of the statute of limitations in favor of Thompson, it certainly cannot be maintained that this was sufficient to stop it in favor of the bank. It must be the concealment or improper conduct of the defendant which stops the running of the statute of limitations. Hoffman v. Parry, 23 Mo. App. 27, 28; Wells v. Halpin, 59 Mo. 95; Foley v. Jones, 52 Mo. 67. The bank made no misrepresentation to the plaintiff or any of its officers respecting this matter. It concealed nothing from them. It was not guilty of any improper act, within the meaning of section 6789 of the Missouri Statutes. The petition does not charge, nor does the proof show, any combination in the nature of a conspiracy between Thompson and the bank in these transactions, so as to bind the bank by the acts or statements of Thompson. On the contrary, the whole theory of the petition, and that of the argument of plaintiff's attorneys, is that the bank received and appropriated the proceeds of these bonds with knowledge of Thompson's fraud; and this essential knowledge is sought to be fixed upon the bank (a corporation, a distinct legal entity) by imputing to it Thompson's knowledge. As already shown, inasmuch as Thompson, in undertaking to sell the new and take up the old bonds, was acting in his individual capacity as the agent of the school board, he was placed under no obligation to communicate to the bank any information he received respecting this matter, from which the law would imply notice to the bank. as the bank was not his principal. And as there is no evidence that Thompson at any time communicated to the officers of the bank his knowledge, and as there was not on the books of entry of the bank, as testified by Latimer, former receiver, who is quite familiar with the books of the bank touching these transactions, anything to have put the bank on inquiry, the only possible ground upon which the plaintiff could recover is that the bank, in fact, and not Thompson, was ultimately the beneficiary of the proceeds of the bonds. On this theory, the cause of action in favor of the plaintiff arose at the time the bank made the appropriation. Its mere silence did not stop the running of the statute of limitations. "Concealment by silence is not enough." Wood v. Carpenter, 101 U. S. 135–143, 25 L. Ed. 807; Hoffman v. Parry, supra. As said by Judge Napton in Smith v. Newby, 13 Mo. 159:

"Our statute does not protect plaintiffs who are ignorant of the facts necessary to enable them to bring suit, unless that ignorance is occasioned by some improper conduct on the part of the defendant. If the defendant absconds or conceals himself, or does any other improper act, to prevent the commencement of an action, he is not within the protection of the statute. If he has not done these things, or any of them, he is protected, although, as in the present case, he may have been guilty of ño laches. Between two parties equally innocent, one of whom must sustain a loss, it is not the policy of the law to interpose."

So Judge Wagner, in Wells v. Halpin, 59 Mo. 95, speaking of this statute of limitations, says:

"But the twenty-fourth section of the same act provides that if any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time limited, after the commencement of such action shall have ceased to be so limited. This provision has been several times before this court for adjudication, and the construction universally placed upon it is that the statute does not protect plaintiffs who are ignorant of the facts necessary to enable them to bring suits, unless that ignorance is occasioned or brought about by some improper conduct of the defendant."

Naturally enough, the sympathies of the court are with the school district. But the sympathies of a court must be in subordination to the law. The loss of the school district in this matter, aside from the malfeasance of Thompson, is attributable to the inexcusable negligence of the school board. The evidence in this case shows that in 1890, after the issuance of the funding bonds, the old bonds were in the hands of one Liggett, represented by one Donaldson, of St. Louis, Mo. This fact was brought directly to the knowledge of the school board by a suit instituted in the Pettis county circuit court by Liggett against the school district to compel the school board to exchange the new bonds for all the old school bonds then held by Liggett, in which it was held that the school district had the right to sell the new bonds, and take up the old bonds with the proceeds thereof. This litigation ended in January, 1891. The evidence further shows that for some time thereafter (perhaps a year) these bonds were in the possession of said Donaldson, in St. Louis, as he had some correspondence in regard to them. It was therefore within the knowledge of the school board as to who held the bonds for two years after the new bonds had been issued and sold, and yet neither the board nor any of its officers ever made any inquiry of the holder of the bonds as to whether he yet held them, but simply contented themselves with mere acquiescence in Thompson's statement that he had not yet obtained them, through a period of three years after the bonds should have been surrendered to them under Thompson's contract of agency. It is a fundamental rule respecting these statutes of limitation, which are favored because they are statutes of repose, that "a party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it; and, if he had the means of discovery in his power, he will be held to have known it.  *  *  * There must be reasonable diligence, and the means of knowledge are the same thing, in effect, as the knowledge itself." Wood v. Carpenter, supra. "Whatever is notice enough to excite attention,

and put the party on guard and call for inquiry, is notice of every-thing to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." Kennedy v. Greene, 3 Mylne & K. 722. "The presumption is that if a party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it." Ang. Lim. § 187, and note. Neither can a party avail himself of this exception to the statute where the means of discovering the truth were within his power, and were not used. Shelby Co. v. Bragg, 135 Mo. 300, 36 S. W. 600. Although the school board knew affirmatively in January, 1891, that Liggett held those bonds; that Donaldson, his representative, a broker in St. Louis, held them thereafter, and the presumption of law being that the condition of possession once existing continued thereafter to exist,—yet for more than three years, until after the appointment of a receiver for the bank in May, 1894, the board made no inquiry of Liggett or Donaldson; and notwithstanding the dilatory tactics of Thompson should have not only excited the suspicion of the board of school directors, but should have exhausted their patience, they sat supinely by and waited until January, 1899, five years and seven months after the actual sale of the bonds by Thompson, before taking any affirmative action and exhibiting active diligence. Statutes of limitation would be of little protection to the beneficiaries in this case, who are really the creditors of the bank, if they can be thus easily avoided.

While the admission or rejection of certain evidence offered by plaintiff on the trial could not affect the result reached by the court, as the objection thereto by the defendant was reserved at the trial by the court, it will now be considered. To sustain the allegation of the petition to the effect that Thompson, the cashier of the bank, practically managed its entire affairs, to the extent of his being its active representative, the plaintiff offered in evidence a paragraph from the petition filed some years ago in this court by Latimer, the then receiver of said First National Bank, in an action against the directors of the bank, charging them with dereliction of duty in permitting Thompson to run its business as he saw fit, and to hold them responsible for damages resulting from the misapplication of its funds, and in making improper loans, and the like. To this offer the defendant objected on the ground of its incompetency. There is no question of the correctness of the general proposition of law that a pleading sworn to by a party may be competent evidence against him respecting the subject-matter of that litigation, when afterwards drawn in question in another suit between him and a third party. It may also be conceded that an allegation in the former pleading of a party, made upon information and belief, may be competent against him, but of much less probative force than one sworn to. But this rule certainly ought to be limited to the instance where the party making such admission in the former pleading is also a party to the subsequent suit wherein the admission is introduced against him as inconsistent with his claim and attitude

in the pending litigation. The suit against the directors was instituted by Latimer as the receiver of the bank, who went out of office as receiver perhaps in 1898, whereupon the defendant herein, De Weese, was appointed receiver. Is there binding privity between the present receiver, as a defendant in this action, and Latimer, the prior receiver, in that action? The admissions of one person are also evidence against another in respect of the privity between them. The term "privity" denotes mutual or successive relationship to some right of property. 1 Greenl. Ev. par. 189. If De Weese, as the succeeding receiver of the bank in this action, asserted some claim or right in respect of the "rights of property" involved in the litigation between Latimer and the directors, there would be such privity in estate as to make the admission of the predecessor in office competent against the successor. But the matter in suit here is entirely independent of the subject-matter of the former litigation, and it does not concern any property right involved in that litigation. It certainly would be carrying the rule respecting admissions in pleading to the furthest extreme, to bind this defendant in this controversy by the allegations of Latimer, the receiver in the former case. But, admitting the unsworn statement of Latimer in that suit to be admissible in evidence in this, it amounts to nothing more than that the directors of the bank were guilty of actionable negligence in permitting Thompson to run the bank at will without their exercising that supervision which the national banking act imposed upon them as a positive duty. It cannot in this action be held to affect the bank with notice of the knowledge obtained by Thompson in transactions in which he was not acting for the bank, but in his individual capacity, for his own aggrandizement, in which he was but using the bank's books of entry to cover up the traces of his fraud; and especially so when the bank did not receive any ultimate benefit from his personal fraudulent transaction. There never was in this whole transaction between the school district and Thompson any pretense or claim by the school district that it was dealing with Thompson as cashier of the First National Bank of Sedalia. And the attempt of the school board to hold the bank responsible for Thompson's embezzlement is altogether an afterthought, after it had been compelled to pay to the holder of the old school bonds the amount thereof in a litigation which ended shortly prior to the institution of this suit. Judgment must therefore be for the defendant.