## L. A. COQUARD, Appellant, v. BANK OF KANSAS CITY, Respondent.

### May 23, 1882.

1. The words "past-due interest" used in a contract, mean interest which has matured and which is collectable on demand.

2. Evidence of a custom among brokers of one place is inadmissible as against the defendant, a resident of another place, when unaccompanied by an offer to show that the latter knew of the custom and contracted with reference to it.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

FISHER & ROWELL, for the appellant.

DYER & ELLIS, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This action was begun before a justice of the peace. The statement of plaintiff is to the effect that he sold to defendant, in the city of St. Louis, $18,000 in Jackson County bonds and past-due interest, for the sum of $19,310.22; that defendant paid him $19,008, leaving due a balance of $302, which is due plaintiff. He gives a voluntary credit for $52.22, leaving $250, for which he asks judgment.

On trial anew in the circuit court, a jury was waived, and there was a finding and judgment for defendant.

It was admitted that defendant is a corporation having its business office at Kansas City, Missouri, and no office in St. Louis, and that J. S. Chick is its president.

It appears from the evidence that the following telegraphic dispatches passed between Chick and Coquard. They were dated and received at the dates placed before each telegram; those sent by Chick are all sent from Kansas City to St. Louis; and those sent by Coquard were all sent from St. Louis to Kansas City.

October 21, 1880, Coquard to Chick : " I offer you, subject to prior sale, $25,000 Jackson 8's at ninety-two on principal and past-due interest to date. Wire me, if you accept."

October 22, 1880, Chick to Coquard : " Will take Jacksons at ninety on principal and past-due interest."

It will be observed that Chick does not accept the offer. He makes an offer at a lower price, and he omits the words " to date," in his reply.

October 22, 1880, Coquard to Chick : " Seven thousand are sold. Accept your offer for eighteen thousand. In-

struct your bank here to accept, and advise me where to deliver."

October 22, 1880, Chick to Coquard: "We accept eighteen thousand bonds. How many coupons attached? Instructions by to-night's mail as to delivery."

October 22, 1880, Coquard to Chick: "All right. Six hold all coupons, ten hold two, two hold. But one each must be taken up in St. Louis."

On the 22d, Coquard writes to Chick that, by exchange of telegrams, he has sold him $18,000 Jackson County eight per cent bonds at ninety cents on the dollar on the principal and past-due interest to date, delivered at St. Louis, and awaits instructions where to deliver them. The bonds are described as $6,000, with all past-due coupons on; $10,000, with two past-due coupons on each; $2,000, with one past-due coupon on each.

On the 22d, Chick writes to Coquard that he has instructed J. C. Moore to receive from Coquard $18,000 Jackson County bonds, and pay $16,200 for them; also, to pay for each past-due coupon attached, $36, in accordance with the offer of Coquard by telegraph accepted on that day.

On the 23rd of October, the following telegrams were sent and received:—

Coquard to Chick: "My offer was on principal and interest to date. You accepted same. Please instruct your bank here accordingly, quick."

Chick to Coquard: "Your offer was on principal and past-due interest. See your letter and our answer."

Coquard to Chick: "Bonds carry interest from August 1st. I did not say on past-due coupons. Instruct your bank here at once."

Chick to Coquard: "Your offer was on principal and past-due interest. No further instructions to give."

On the 23rd of October, Chick wrote to Coquard: "Your favor of the 22d, as well as your telegram of this date, are received. I cannot see how there can be any misunderstanding between us, and I have instructed the Merchants' National Bank to pay you, as I understand it, in accordance with your offer and my proposition, — that is, ninety cents on dollar for principal and past-due interest. That is, if bond amounted to $1,000, and one past-due coupon 40-1040, I would pay you ninety cents on the dollar for the same, or $936. I cannot construe the trade in any other way. But, if you construe it differently, consider the trade off."

On the 23rd, and apparently before receiving the last letter, Coquard writes to Chick acknowledging the letter of 23rd and telegrams of 23rd, enclosing his account, and stating that he delivered the $18,000 bonds to Moore, cashier of the Merchants' National Bank, and received $19,008, leaving due $304.30 for ninety per cent of the interest on the bonds from August 1st to date, which he requests Chick to remit, on the ground that, by the letters offering the bonds and Chick's telegram of acceptance, the bonds were sold for ninety cents on the dollar of principal and interest to date.

Coquard writes again on October 25th: "My letter of 21st, offering the bonds, stated plainly, ' on principal and past-due interest to date,' and my subsequent telegram had the same meaning, and I have your wires accepting same. I purchased the bonds on your bid, and hope to receive by return mail a check for the balance due me."

The correspondence closes with a letter from Chick which says: "You have too much experience in the bond business to claim that past-due interest would include interest not yet due; that is, interest accrued since August 1st. If you had stated ninety cents and accrued interest, there could have been no misunderstanding; and if you did understand

it as I stated to you, you should not have delivered the bonds. I cannot entertain your claim."

It was admitted that the form of the bonds was that of bonds bearing interest at eight per cent, evidenced by attached coupons maturing on February 12th and August 1st of each year; and that the interest on the bonds sold, from the maturity of the last coupons to the sale, was $302.

It appeared that, on October 22d, Chick wrote to Moore, to receive the bonds and pay him $16,200, and $36 for each past-due coupon; and to allow nothing for interest accrued on bonds since August 1st.

Coquard was asked on the witness-stand as to the general custom among brokers and bankers in the markets of St. Louis, as to the interpretation of the term "past-due interest" upon coupon bonds. The objection was interposed, that defendant was at Kansas City when the agreement was made, and made his offer from there, and could not be bound by a St. Louis custom, and also that the agreement was clear and unambiguous.

The testimony was excluded, and a general offer to show a custom amongst brokers and bankers in St. Louis, that "past-due interest" upon coupon bonds, meant all past-due coupons and the interest running on the bond from maturity of last coupon to the time of sale, was also excluded on the same grounds.

The court gave a declaration of law of its own motion, that "plaintiff is not entitled to recover, if it appears from the evidence that he accepted from defendant's agent $19,-008, and then and there voluntarily and unconditionally delivered the bonds to said agent with knowledge that the sum so received was the full amount defendant understood it had agreed to pay for said bonds, and was the full amount it intended to pay therefor."

Money may be owing which is not due. A man owes the money represented by his note; but the money is not due

until the note matures. According to the plain meaning of the words, " past-due interest" can only mean interest which has matured and which is collectable on demand. This could not properly apply to interest represented by coupons or promissory notes which had a month to run. " Custom is admissible to explain what is doubtful ; but it is never admissible to contradict what is plain." *Blackett* v. *Royal Exchange Assur. Co.*, 2 Cromp. & J. 249. It is true, that words and phrases in the ordinary commerce of life, as well as in business, do sometimes, in the process of time and by a universal custom, lose their original meaning. A custom that a " dozen " of a certain article meant " thirteen," or that " a thousand " meant " twelve hundred," might be shown under certain conditions. But, as the proper office of a custom is to ascertain the meaning of the contracting parties, and one of the contracting parties resided hundreds of miles away from St. Louis at the time of the contract, then, even if it be taken that the contract was completed in St. Louis and not in Kansas City, the court committed no error in excluding evidence of the custom which was not accompanied with an offer to show that the party at Kansas City whom it is sought to charge, knew of the custom and contracted with reference to it. Whether the telegram from Kansas City or the telegram from St. Louis completed the contract, may be doubtful; but, if the contract was completed at Kansas City, the offer of a local custom at St. Louis was incompetent, of course.

There is no dispute about the testimony, and on the evidence we think that plaintiff was not entitled to recover as a matter of law. It is unnecessary to consider the objections urged against the declaration of law given by the court.

The judgment is affirmed. All the judges concur.