Emily J. Brown, Appellant, v. Jacob Strimple et al., Respondents.

### St. Louis Court of Appeals, March 23, 1886.

1. CONTRACTS—EVIDENCE—CUSTOM.—Under a defence of fraudulent representations and orders of the adverse party, proof of a custom showing that it was the adverse party's duty to make certain disclosures, and that he failed to do so, is inadmissible in support of the defence.

2. ——— Evidence of a custom of a particular class is inadmissible in construing a contract made with one not of that class, unless he is shown to have had notice of the custom at the date of the execution of the contract.

APPEAL from the St. Louis Circuit Court, W. H. HORNER, Judge.

*Reversed and remanded.*

EDWARD CUNNINGHAM, for the appellant: The court erred in admitting evidence of an alleged custom, or that it was always "customary, if there are old buildings on the lot to be removed by the contractor, to state this in the specifications." Had there been proper evidence to establish a custom among contractors and builders, uniform, certain, and reasonable, it was not binding on plaintiff until some evidence tending to prove her knowledge of it had been offered. *Walsh v. Mississippi Transportation Co.*, 52 Mo. 434. But such evidence did not tend to prove a custom, either uniform, certain, or reasonable. It relates merely to how parties usually make their contracts, and not to the interpretation or execution of them; and such a custom, if established, would not be reasonable. *Ober v. Carson*, 62 Mo. 209.

TAYLOR & POLLARD, for the respondent: That the

evidence of custom was competent for the purpose for which we offered it, was manifest. *Daniels v. Insurance Co.*, 12 Cush. 417; *Paper Mill Co. v. Farmer*, 41 N. H. 389; Lawson on Ex. 73.

ROMBAUER, J., delivered the opinion of the court.

The defendants are builders, and for a stated compensation, which has been fully paid, agreed to build two houses for the plaintiff.

The contract, among other things, provided as follows: "The work of erecting and finishing said buildings, including all alterations and additions herein provided for, or that may be agreed upon hereafter, is to be executed with all reasonable dispatch, and the same shall be completed and delivered to the said party of the first part [the plaintiff] in perfect order and condition, fit for occupancy, on or before the fifteenth day of October, 1883, and for every day thereafter, until said buildings are completed and delivered to the said party of the first part, the said parties of the second part [the defendants] do hereby covenant and agree to pay to the said party of the first part, not as penalty, but as liquidated damages, an amount at the rate of three dollars per day, which amount is agreed upon as being the actual damage, provided they are not kept back by an unavoidable accident or hindrance over which they have, or could have, no control, and no such accident or hindrance shall be credited as an extension of time for the completion of this contract, unless the same shall be claimed under a written request by the said parties of the second part, and approved by said party of the first part, or the superintending architect, in the week that any hindrance or accident may occur, and these conditions are not to be made or rendered void by any alterations, additions, deviation, or omissions, of the work to be performed under this contract, but in such case the time to be extended as shall be deemed proper by the

superintendent, and agreed to by the said parties of the second part at the time of such extension. The superintendent's opinion, certificate, report, and decision, on all matters, to be binding and conclusive on the parties of the second part."

This action was brought for a violation by the defendants of this clause of the contract. The plaintiff claims that the buildings were not completed until April 1, 1884, in consequence whereof she sustained damages in the sum of five hundred dollars.

Defendants, by their answer, claim :

1. That the buildings were completed and delivered to the plaintiff December 5, 1883.

2. That the plaintiff, when the contract was let, represented to them that there were no obstructions on the premises, whereas, in fact, there were some old dilapidated buildings on the premises, which delayed the excavation for a period of at least twenty days.

3. That the plaintiff at the same time represented that there were water-pipes laid in the street on which said buildings were to front, and that it was the duty of the plaintiff to afford facilities for obtaining water, whereas there was no water in said street ; that the defendants called the plaintiff's attention to this fact, and she agreed to attend to it but failed to do so, by which the defendants were delayed four weeks in their work. That all of the said representations of the plaintiff in regard to such water were false and fraudulent.

4. That the plaintiff requested the defendants not to lay certain parts of a pavement until she had completed certain stone terrace steps which she proposed to build in front of said houses.

5. That during the construction of the houses, and after the mill work was ready for delivery, by an unavoidable accident the planing-mill was destroyed by fire, destroying such mill work, and causing an unavoidable delay of thirty-five days. That the defendants, immedi-

ately after such accident, made a claim on the architect in writing for an extension, and the architect approved of the same, during the weeks when such delay occurred.

These special defences were denied by reply. The cause was tried by a jury, who, under the evidence and instructions of the court, found for the defendants.

The errors complained of are that the court admitted illegal testimony for the defendants, and misdirected the jury.

There was evidence tending to establish the first partial defence, namely, that the houses were completed in December, 1883. As to the admission of that evidence, and the instructions of the court on that branch of the case, there is no complaint.

There was, also, some evidence tending to establish the fifth partial defence, namely, that unavoidable delay was caused by the destruction of the mill and mill lumber by fire, and that the defendants made written claims for additional time on that account, and that such claims were allowed by the architect. There is no complaint touching the submission of that defence to the jury, nor as to the mode of its submission.

Touching the second, third, and fourth defences, however, there was no legal testimony whatever introduced by the defendants. Those defences, if sustainable at all, rested on the grounds of false representations made, and positive orders given by the plaintiff. Of neither of these was there any evidence whatever. Nor was there any evidence of any written application made to the architect on account of the delays alleged to have been caused by the facts stated in these defences.

It is needless to discuss the further complaint that these three defences were submitted on improper instructions, since it was clearly the duty of the court, under the pleadings and evidence, to withdraw them from the consideration of the jury altogether.

Instead of giving evidence of any false representa-

tions on part of the plaintiff, on the subjects stated in the second and third defences, or of giving evidence of the plaintiff's orders on the matter stated in the fourth defence, the defendants were permitted against the plaintiff's continued objections, to give evidence of a custom of builders in this city. Even if this evidence had related to a general custom, it would have been inadmissible under the pleadings and contract. Relating as it did to the custom of a particular class, of which the plaintiff was no member, it was subject to the further objection that it was not shown that the plaintiff had any notice or knowledge of it prior to the date of the contract. *Walsh v. Transportation Co.*, 52 Mo. 434; *Coquard v. Bank of Kansas City*, 12 Mo. App. 261.

The judgment is reversed and the cause remanded. All the judges concur.