# SOUTHERN COMMERCIAL SAVINGS BANK v. SLATTERY'S ADMINISTRATOR et al., Appellants.

## In Banc, February 19, 1902.

1. **Witness:** PARTY TO CONTRACT: CASHIER OF BANK: BORROWER DEAD. A "party to the contract," as the term is used in the statute, means the person who negotiated the contract rather than the one in whose name and interest it was negotiated. A cashier of a bank, who is also a stockholder, is not an incompetent witness to testify concerning the making of a loan to a deceased borrower, negotiated by the discount committee, he being present only in the capacity of a clerk.

2. ————: ————: CORROBORATED BY MEMBER OF DISCOUNT COMMITTEE: SAME RESULT: PRACTICE. Where the result would have been the same if the testimony of a witness alleged to be incompetent had been excluded, the court will not reverse the cause on that account. And in this case where the testimony of a member of the discount committee which negotiated the loan on the part of the bank to a deceased borrower, was merely corroborate of that of the cashier, who was a competent witness, uncontradicted and unimpeached, the court does not consider whether such witness was incompetent or not.

3. ————: EQUITY. Error in admitting testimony by the referee in an equity case will not work a reversal.

4. **Reference:** REVIEW OF EVIDENCE. Where it is contended, in an equity case, that the finding should have been for appellant on the evidence, the appellate court will review the whole case.

5. **Deed of Trust:** NEGOTIATION OF NOTE FOR VALUE: TWO SETS OF NOTES: PRIORITY. Lange executed one principal note for $20,000 and ten interest notes for $600 each to Renner and secured them by a deed of trust on land. Renner indorsed these notes without recourse and delivered them and the deed of trust to Lange, who took them to plaintiff bank and used them to secure a loan of $10,000 to himself. Lange delivered the notes and stated he was going right up town and would have the deed of trust recorded. He did so, and there met Slattery, showed him the recorded instrument and eleven notes corresponding in every respect to those described in the deed of trust, and Slattery also made him a loan, taking the notes and

original deed of trust as security. Lange then returned to the bank and exhibited a receipt from the recorder, showing the deed of trust had been recorded, and the next day left with it a certified copy thereof. *Held,* that the delivery of the notes to the bank as security for the $16,000 loan was a negotiation of the paper for value, even though Lange was permitted to carry away the deed of trust under the circumstances stated, and even though the final credits for the loan were not passed to Lange's account until some days later. Therefore, the bank is entitled to the benefit of the mortgage.

6. ————: NEGLIGENCE IN HANDLING: INNOCENT PARTIES: KNOWLEDGE. Nor does the rule apply that the loss should fall on the bank because it put it in Lange's power to defraud Slattery, for there is nothing to indicate that the bank had any knowledge that Lange intended thereby to commit a fraud. That rule is always based on knowledge.

7. ————: POSSESSION OF RECORDED INSTRUMENT: EVIDENCE OF OWNERSHIP. The possession of the recorded deed of trust by the mortgagor is not evidence of ownership of the notes described therein, although he may at the time exhibit similar notes indorsed by the payee without recourse.

8. ————: ————: TWO SETS OF NOTES: RIGHTFUL OWNER. The possession of the mortgage and notes similar to those described therein does not entitle the holder to the benefit of the security as against the pledgee of like notes previously negotiated for value under representation that they were secured by the mortgage.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED.

*Noble & Shields* for appellants.

(1)   Evidence on which decree is based is incompetent. The record shows that Street and Hofmeister conducted the negotiations with Lange in question, that Lange is dead, and that Street and Hofmeister were stockholders and directors of plaintiff, and its agents in these very transactions, and were not competent witnesses. 1 Whart. Ev., sec. 466; Leach v. McFadden, 110 Mo. 584; 1 Greenl. Ev., secs. 333, 386, 389,

390; Williams v. Perkins, 83 Mo. 379; Meier v. Thieman, 90 Mo. 442; Bagnall v. Bank, 70 Mo. App. 506; Lightner's Adm. v. Gregg, 61 Mo. App. 653; Lins v. Lenhardt, 127 Mo. 290; Berry v. Hortzell, 91 Mo. 136; Messmer v. McCoy, 113 Mo. 282; Wendover v. Baker, 121 Mo. 273; Chapman v. Dougherty, 87 Mo. 617; Curd v. Brown, 148 Mo. 95; Wilcoxson Bank v. Rood, 132 Mo. 263; Wood v. Mathews, 73 Mo. 477; Butts v. Phelps, 79 Mo. 302; Williams v. Edwards, 94 Mo. 451; R. S. 1889, sec. 8918; Brim v. Fleming, 135 Mo. 597; Green v. Ditsch, 143 Mo. 9; Eyerman v. Piron, 151 Mo. 115; Kuhn v. Ins. Co., 71 Mo. App. 309; Holman v. Lange, 143 Mo. 106; Baker v. Reed, 162 Mo. 341; Henry v. Buddecke, 81 Mo. App. 364; Newspaper Co. v. Jung, 81 Mo. App. 577. Plaintiff having taken Slattery's deposition on the whole case, he was a competent witness in his own behalf.   Tomlinson v. Ellison, 104 Mo. 105; Holman v. Lange, 143 Mo. 107; Hoehn v. Stuttenon, 71 Mo. App. 402; Ess v. Griffith, 139 Mo. 329; Borgess v. Vette, 142 Mo. 570.   (2)   If this court should hold Street and Hofmeister competent, the judgment should be for Slattery's administrator on the whole evidence.   The referee reported all the evidence, and this is an equity case, and this court will review the evidence and render such judgment as ought to be rendered.   Blount v. Spratt, 113 Mo. 48; Lins v. Lenhardt, 127 Mo. 271; Warren v. Ritchie, 128 Mo. 311; Clark v. Bank, 57 Mo. App. 277; Ely v. Ownby, 59 Mo. 437; Holt v. Simmons, 16 Mo. App. 97; Lewis v. Donovan, 8 Mo. App. 603; Knapp v. Publishers' Co., 127 Mo. 53; Heman v. Brinton, 14 Mo. App. 121; Benner v. Markle, 37 Mo. App. 234; Prendergast v. Eyermann, 16 Mo. App. 387.   (3) Delivery of deed of trust to Renner is immaterial.   Delivery is a question of intention.   Lange never intended to deliver deed of trust and notes to Renner, who was his tool, except for the purpose of making the notes negotiable.   Powell v. Banks, 148 Mo. 632; Ayers v. Milroy, 53 Mo. 521.   To constitute delivery, deed must pass under power of grantee with

consent of grantor. So long as grantor retains control of the deed he retains title. Invers v. Pumphrey, 24 Ind. 240; Wilson v. Cassidy, 2 Ind. 562; Elmore v. Marks, 39 Vert. 541; Cook v. Brown, 34 N. H. 475; Parker v. Dustin, 2 Foster, 424; Maynard v. Maynard, 10 Mass. 456; Hawks v. Pike, 105 Mass. 583; 1 Daniels, Neg. Inst. sec. 67, p. 85; Stokes v. Anderson, 118 Ind. 533; Kenney v. Ford, 52 Barb. 194. (4) Deed of trust is an incident to the debt and when a debt is created by negotiation of the notes, the deed partakes of the negotiability of these notes and passes with them as security. Logan v. Smith, 62 Mo. 455; Hagerman v. Sutton, 91 Mo. 519; Johnson v. Johnson, 81 Mo. 336; Bell v. Simpson, 75 Mo. 485; Bank v. Carondelet, etc., Co., 150 Mo. 570; Kingsland v. Chrisman, 28 Mo. App. 314; Mays v. Robinson, 93 Mo. 123. (5) Plaintiff's notes not the notes secured by deed of trust. Plaintiff's case is supported by statements and actions of the deceased maker of the notes and deeds of trust narrated five years after the occurrences by interested witnesses. Such testimony is not to be relied on. Johnson v. Morles, 42 Mo. 437; Underwood v. Underwood, 48 Mo. 531; Wendover v. Baker, 121 Mo. 297. (6) Notes held by Slattery were negotiated by Lange on July 13 or 14, 1892, for value, before bank's set were negotiated, and as they were notes described in the deed of trust they carried the deed with them. Slattery also had deed, certificate of title and insurance policies. These notes becoming the only true set of notes by negotiation for value to Slattery, continued such, and when hypothecated again with Slattery for value, carried the deed of trust, and are entitled to its security. George v. Somerville, 153 Mo. 14. (7) The doctrine of delivery by relation has no application, as rights of innocent third parties intervened. Jackson v. Griswold, 4 Johns. 230; Jacobus v. Life Ins. Co., 27 N. J. E. 604; Judge v. Lockenger, 62 N. Y. 270; Durfee v. Noels, 2 N. Y. Sup. 466; 3 Caines R. 261. (8) Two sets of notes existing, possession of the deed of trust and insurance policies

by one purchasing the same for value, should be conclusive as to which notes were intended to be secured by deed of trust, in the absence of competent and convincing testimony to the contrary.    (9)    The bank put it in the power of Lange by its conduct to defraud Slattery, and by its negligence in not retaining possession of the deed or recorder's receipt enabled Lange to negotiate Slattery's set of notes, and where one of two innocent parties must suffer, he must bear the burden or loss whose acts or neglect has been the occasion of the suffering. Simpson v. Bk. of Commerce, 43 Hun, 50 Sup. Ct. (N. Y.) 161; Bank v. Cartright, 22 Wend. 348; McNeal v. Bank, 46 N. Y. 325; Simpson v. Del. Hugo, 94 N. Y. 189; Preston v. Witherspoon, 109 Ind. 419; Hunter v. Bradley, 68 Ill. 553; Carpenter v. Langan, 16 Wall. 271; Pa. Rd. App., 86 Pa. 81; White v. Springfield, 3 Seld. 22; Ladd v. Campbell, 56 Vt. 529; Porter v. King, 1 Fed. 755; 1 Am. Ency. Law, p. 417, sec. 1; Bottevick v. Potter, 63 Mo. 212; Guffey v. Riley, 88 Mo. 429; Terrell v. Andrew Co., 44 Mo. 312; Smith v. Perkins, 8 Biss. 73; Olcott v. Crittenden, 68 Mich. 230.    (10) A subsequent bona fide purchaser who has been vigilant will be protected against a prior one who has not been vigilant. Judson v. Cocoran, 17 How. 615; Dean v. Hale, 3 Russell, 1; Loveridge v. Cooper, 3 Russell, 160; Mongells v. Dickson, McN. & G. 437; Borley v. Greenleaf, 7 Wheat. 46; Murray v. Withrow, 2 John. Ch. 442; Moon v. Holcombe, 3 Leigh, 507; Baker v. Wood, 157 U. S. 216; Executor v. Leist, 13 Ohio St. 419; Falkner v. White, 45 N. W. 1122.    (11)    The evidence as to signing and stamping Slattery's notes by Singer and Renner in the fall of 1892, falls of its own weight, and does not impair Slattery's evidence or his title to his notes and the security of the deed of trust.    In answer to plaintiff's contention that estoppel is not pleaded, we cite Savings Bk. v. Branch, 104 Mo. 440.

*W. M. Kinsey* and *Rassieur & Rassieur* for respondent.

(1) Both Hofmeister and Street were competent witnesses. This proceeding is not adverse to any one whose "lips have been sealed by death." Lange's estate is not affected by it and the parties here stand upon equal terms, each claiming priority of right against the other through a separate and distinct transaction had with the deceased and through which the other claims nothing. 1 Wharton's Evidence (3 Ed.), sec. 470; Looker v. Davis, 47 Mo. 140; Amomett v. Montague, 63 Mo. 201; Brim v. Fleming, 135 Mo. 606; Downs v. Belden, 46 Vt. 674; Hostetter v. Schalk, 85 Pa. St. 220; Bates v. Forcht, 89 Mo. 121; Leach v. McFadden, 110 Mo. 584. (2) If it should be held by this court that Hofmeister was incompetent to testify regarding the transaction with Lange on the ground that he was a contracting agent on behalf of the bank, Street's testimony can not be excluded for the same reason, because he was not such contracting agent. Banking House v. Rood, 132 Mo. 256. (3) Respondent became a holder for value of the set of notes relied upon by it on the morning of July 13, 1892, before the deed of trust securing them had been recorded and before the inception of Lange's first transaction with Slattery. The offer of this set of notes and deed of trust by Lange as collateral security for a renewal of his past due loan of $10,000 and an increase of the amount to $16,000, and their acceptance by the bank upon the terms offered, was a negotiation for value of the notes at that time. What was done afterwards was in further execution only of a valid contract then made. Deere v. Marsden, 88 Mo. 512; Oates v. National Bank, 100 U. S. 827; Daniel's Neg. Inst. (4 Ed.), secs. 826, 827. (4) Respondent was not affected with notice of Lange's intention to duplicate the notes described in the deed of trust, because he was one of its directors. Bank v. Lovitt, 114 Mo. 519; Johnson v. Shortridge, 93 Mo. 227. (5) The transfer by Lange to respondent, on the morning of July 13, 1892, of the notes held by it before he

had any transaction with Slattery, in which a similar or dupli-cate set were used for the first time, vested in respondent title to the security. The security passed as an incident to the debt evidenced by respondent's set of notes without any formal assignment, or, as has been held by very high authority, with-out even delivery or mention of it. Hagerman v. Sutton, 91 Mo. 531; Carpenter v. Longan, 83 U. S. 275; Kernohan v. Manss, 29 L. R. A. 317; Morris v. Bacon, 123 Mass. 58. (6) There is no evidence in this case that either party had any notice or was put upon inquiry as to Lange's dealings with the other in respect to the security in question until after his death. Both dealt with him in good faith, and in entire ignorance of his fraudulent designs. The party holding the legal title to the security must therefore prevail. Kernohan v. Manss, 29 L. R. A. 317. (7) Appellants seem to rest their case upon the proposition that Lange, being permitted by the bank to retain the recorder's ticket receipt for the deed of trust, was thereby enabled to possess himself of that instrument and transfer it to Slattery as security for a fabri-cated set of notes negotiated by him after the bank had re-ceived its set in good faith for value and without notice of his fraudulent designs. Such transfer was a nullity, and the possession of the deed alone clothed Lange with no power what-ever to defraud any one. Pickett v. Jones, 63 Mo. 195; Car-penter v. Longan, supra. (8) The evidence offered by ap-pellants as to the custom or usage among real estate agents and others in negotiating notes and the recorder's receipt for the deed of trust securing them in the same manner as the notes and deed itself (if sufficient to establish such custom, which we deny), was irrelevant and incompetent, first, because it falsely assumes that respondent knew or ought to have known that Lange would fabricate and use with the ticket re-ceipt or deed a set of notes answering the description of the set held by respondent, and intended to be secured; second, because the evidence is offered in proof of an estoppel, when

none is pleaded; and third, because such evidence can be received only to show the intention of parties to a contract in respect to matters not clearly expressed.  Tilley v. County of Cook, 103 U. S. 162.  (9)  Possession of the ticket receipt or the deed of trust alone clothed Lange with no power whatever to defraud Slattery.  His whole power for mischief rested solely upon the fabrication or practical forgery and use by him of a second set of notes answering the description of those secured by the deed of trust.  No one could foresee or be held to anticipate the commission of this crime.  There is a forged deed in Slattery's chain of title to the security in question, responsibility for which can be traced to no one except Lange.

PER CURIAM:  The salient facts and features of this litigation are sufficiently presented in the following statement in the chronological order of their occurrence.  On July 12, 1892, the Lange Financial Company, a corporation of which one William B. Lange was at the time president, executed to Ernest Renner eleven promissory notes, one for twenty thousand dollars, due five years after date, and ten for the sum of six hundred dollars each, due one each six months during the five years, which latter obligations represented the interest to be earned upon the principal note.  At the same time it executed a deed of trust to secure the payment of the notes, wherby it conveyed to Charles F. Vogel as trustee, certain of its property at the southeast corner of Third and Market streets in the city of St. Louis.  Renner was an employee of William B. Lange, and at the request and direction of the latter, indorsed the notes without recourse, and thereupon Lange took possession of them.

At the time the notes and deed of trust above mentioned were executed, the property was subject to two prior deeds of trust, one for six thousand dollars held by James M. Carpenter, and the other for ten thousand dollars which Lange had

sometime previously pledged to the plaintiff as security for a cash advancement to him of ten thousand dollars. This latter deed of trust was then three days over due, and that held by Carpenter was to mature seven days latter. In these circumstances Lange had, sometime prior to July 12, 1892, suggested to the cashier of the plaintiff bank that it increase his loan to sixteen thousand dollars by paying off the Carpenter incumbrance, release the ten thousand dollar second deed of trust and accept as security the twenty thousand dollar deed of trust over which the controversy in this case arises. He was informed that it would be necessary for him to meet the discount committee of the bank and discuss the proposal with them. And upon that meeting it was decided that "when his [Lange's] paper matured, or when it became necessary that he pay off this first deed of trust," the bank would advance the additional six thousand dollars in accordance with his proposal, if all was found to be correct.

On July 12, 1892, or the day previous, Lange requested that the discount committee be called together to meet him at nine o'clock the following morning, stating to the cashier of the plaintiff that he "had perfected his deed of trust and was prepared to close the loan that had been agreed upon." This committee was composed of Fred Hofmeister, John Beckert, Jr., and one Meegan, who died prior to the trial below, and in accordance with Lange's request Hofmeister and Meegan met him in the bank at the hour named, Street, the cashier, also being present. Lange stated that he had asked the committee to meet him in order to close the loan previously agreed upon, produced the deed of trust and the twenty thousand dollar note, together with the ten interest notes, and handed them to Meegan, who examined them and pronounced them regular and in proper form and then handed them to Street, the cashier, who in turn put them into the safe where they remained twenty days and until they were transferred to a safe-deposit box owned by plaintiff. They have ever since been

in its possession. The deed of trust did not follow the notes into the safe, but was given to Lange upon his statement that as he was "going right up to the city, he would take it up and have it recorded." On the day following he returned and informed the discount committee that he had recorded the deed of trust and. exhibited the receipt of the recorder of deeds upon a card such as is issued for instruments filed in his office, and stated that he would bring to the bank a certified copy of it, which he afterwards did. For some unexplained reason Lange was permitted to retain the card.

It was in evidence that the collateral note given by Lange to the plaintiff for the new loan of sixteen thousand dollars, to secure which the twenty thousand dollar deed of trust and notes were pledged, bore date of sixteenth day of July, 1892, and that its proceeds were formally credited to Lange's account upon plaintiff's books on July 19 following. It matured ninety days after date, and when due was cancelled and replaced by a new collateral note for seventeen thousand dollars to which amount the loan was then increased, and the latter obligation was at its maturity replaced by another for eighteen thousand dollars representing an increase of an additional one thousand dollars. There were numerous other renewals until January 25, 1894, at which time the plaintiff's claim had been reduced to the original amount, and under that date Lange executed the collateral note upon which plaintiff still holds the notes and deed of trust now in question.

Sometime in July, 1892, but on what day it does not appear from the evidence, Lange met Dennis P. Slattery in the courthouse and solicited a loan from him, informing him that he "owed some money on a piece of property on which he had a deed of trust." Slattery replied that he had no money on hand, and Lange asked him to indorse for him for a few days, offering as security a set of notes of the same description as those mentioned in the deed of trust of July 12 on the property at Third and Market streets, together with the

recorder's receipt for that conveyance which he had taken from the bank to place on record, and certain insurance policies, and stating that Slattery might come into the recorder's office and "see that the papers were all right, as he had just recorded them." They went into the office of the recorder and Lange exhibited the card to a clerk who thereupon produced the deed of trust for their inspection. Slattery compared the notes with those described in the deed of trust and checked them off, and having thus convinced himself, indorsed Lange's notes for four thousand dollars and took the notes, insurance policies and recorder's receipt as security. About ten days later Lange returned with the notes bearing Slattery's indorsements cancelled and received back the deed of trust, notes, policies and recorder's receipt. In September of the same year Slattery again indorsed for Lange to the amount of three thousand dollars, and as security took the same recorder's receipt, notes and policies of insurance, together with three additional policies and held them until the note he had thus indorsed was returned to him cancelled, when he gave the securities back to Lange.

In January, 1893, Lange applied to Slattery for further indorsements, but the latter declined to again accommodate him in that manner although he finally loaned him one hundred shares of Missouri Pacific stock, receiving as security for return of the stock the same notes, policies and recorder's receipt. These he retained until the first day of February following, when Lange brought back the stock, and they seem to have done no further duty as collaterals until the first of September, 1893. About that day Lange again solicited Slattery for a loan, this time asking for fourteen thousand dollars, which was more than the latter had at hand. After some negotiation, Lange agreed to take ten thousand dollars and some of the Missouri Pacific stock, but Slattery declined to take the recorder's receipt for the deed of trust, or a certified copy of that instrument, demanding the original and a certifi-

cate of title.   These were furnished him and he turned over to
Lange fourteen thousand dollars in cash or its equivalent, for
which he received a collateral note for that amount due one
year after date, describing the securities pledged, among
which were the original deed of trust to Vogel, trustee, and
the same notes which Lange had given him before, although it
was stated in the collateral note that the first two of the ten
interest notes were paid.   This collateral note and the securi-
ties so pledged with it remained in Slattery's possession con-
tinuously from that time until the trial of the case.

The notes held by plaintiff are on white paper, the blank
spaces being filled in with pen and ink in Lange's writing, while
the blanks in those held by Slattery are filled up in typewrit-
ing, the principal note being on tinted paper and the interest
notes on white paper.   On January 28, 1894, Lange died, and
shortly afterwards plaintiff's agents took possession of the prop-
erty conveyed by the deed of trust of July 12, 1892, and
began to collect the rents.   Then the fraudulent actions of
Lange for the first time came to light, and it was discovered
that although there was but one deed of trust, both Slattery
and the respondent held a set of notes in every respect identical
with those mentioned in the deed of trust.   Neither had ever
known of Lange's dealings with the other, and each asserted
that the notes held by the other were spurious and fraudulent.
Slattery, having in his possession the original deed of trust
through his loan to Lange of September 1, 1893, called upon
Vogel, the trustee in that conveyance, to sell the property in
execution of the trust, but he, having in the meantime become
the administrator of Lange's estate, declined, and thereupon
Slattery called upon Patrick Staed, the then acting sheriff of
the city of St. Louis, to act in Vogel's place, the deed of trust
providing that upon refusal of the original trustee to act, that
officer should succeed to the trust, and accordingly Staed adver-
tised the property for sale under the deed of trust.

These are the facts out of which the present case arises,

as best we can gather them from a record of unnecessary length.   The amended petition of plaintiff prayed an injunction restraining Slattery and Staed from making the sale advertised, and a decree declaring the notes held by Slattery to be spurious and counterfeit and not the notes secured by the deed of trust of July 12, 1892, and general relief.   Slattery's answer was in the nature of a cross-bill and set out the facts from his side of the case and prayed that he be adjudged the lawful owner of the notes secured by the deed of trust in question, that the bank be perpetually enjoined from making any claim that the notes held by it were the genuine ones, and that it be required to account for the rents collected from the property.

Staed's answer was a general denial, and Mathildo Lange, the remaining defendant, who was alleged in the petition to have acquired the equity of redemption in the property involved, admitted, upon information and belief, the facts set up in the petition.

A temporary restraining order was granted and the case sent to a referee to try all the issues.   In due time he filed his report finding for the plaintiff bank, to which Slattery filed forty-nine exceptions.   These the trial court overruled and confirmed the report, entering a decree for the bank, making the temporary injunction perpetual.   After the trial, but before the referee filed his report, Slattery died and the cause was revived in the name of his administrator, who, after unsuccessful motion for rehearing, prosecutes this appeal.

I.   In the proceedings before the referee, the plaintiff called as witnesses to prove the transactions by which it acquired the notes and deed of trust from Lange, Street, its cashier, who was also a stockholder, and Hofmeister, a director and member of its discount committee.   Counsel for Slattery objected on the ground that those witnesses were incompetent to testify in regard to any transactions with Lange who was then dead, but the referee overruled the objection.

Before proceeding to discuss the real issue in the case, it is proper to dispose of this question, inasmuch as the plaintiff's case rests largely upon the testimony of these witnesses, that a reversal must follow if both of them were incompetent. Their competency depends upon our statute, section 8918, Revised Statutes 1889, which is section 4652 in the Revision of 1899, and in considering our judgment upon this point we need look no further than to that section and the construction heretofore put upon it in our decisions. It has always been held to be an enabling and not a disabling statute (Bates v. Forcht, 89 Mo. 121; Fink v. Hey, 42 Mo. App. 295); and to supersede the common-law rule to the extent of its terms. So if Street was a competent witness at common law, or if he is not included in the proviso of our statute, the ruling of the referee was right. It can not be maintained that he was a party to the contract between Lange and the plaintiff by which the latter first acquired the deed of trust and notes, because he took no part in the transaction, the negotiations being carried on by the discount committee of which he was not a member. He was present in the capacity of a clerk, not as a contracting agent. The committee alone had power to make such a contract for the bank and the mere presence of Street when the contract was made does not alter the case.

But counsel for defendants urge that Street, being also a stockholder, was an interested party and so incompetent to testify. It is sufficient answer to this to say that under our statute the interest of a witness alone does not exclude him, where the other party is dead. That happens only because he and the deceased are both parties to the contract, or cause of action. In other words, the body of the statute removes the common-law disability arising out of interest, while the proviso confines the exclusion in case of the death of one party to a *party to the contract or cause of action,* so that a "party to the contract," as the term is used in the statute, is considered to mean the person who negotiated the contract, rather than the

one in whose name and interest it was made. [Banking House v. Rood, 132 Mo. 256.] As Street did not negotiate nor close the contract between Lange and the plaintiff, we hold that he was not rendered incompetent by Lange's death, and that the referee properly admitted his testimony. This conclusion renders it unnecessary to review the action of the referee in overruling the objection to the testimony of the witness Hofmeister. His testimony was merely corroborative of Street's and that of the latter was not disputed, denied or impeached, so that, even if we disregard the evidence given by Hofmeister, the facts upon which plaintiff relies would still be established, and the final result would be the same had the referee excluded his testimony entirely. As this is a proceeding on the equity side of the court, the action of the referee in overruling the objection to the testimony of Hofmeister, even if erroneous, which we do not decide, was not prejudicial to the defendants.

II. It is further contended that aside from the testimony of Street and Hofmeister, the decree should have been for the defendants, upon the evidence, and we must, therefore, review the whole case. [Lins v. Lenhardt, 127 Mo. 271.]

The referee found and held that the transaction of July 12 or 13, 1892, between Lange and plaintiff by which the notes were delivered into its custody upon its agreement to increase the loan to sixteen thousand dollars was a negotiation of the paper for value, even though he was permitted to carry away the deed of trust under the circumstances shown in evidence, and the formal credits were not passed to his account upon plaintiff's books until some days later. The defendants challenge the correctness of that ruling, and insist that it is unwarranted both in law and in fact. Upon that question hangs the success of this appeal, for it can not be disputed that Slattery did not come into possession of the set of notes held by him until some time later in the same day, or on the day following. When Lange solicited him for a loan, the deed of

trust had been recorded. The ticket receipt was produced and they went together to the office of the recorder and examined the same deed which Lange had brought from the bank to record, and Slattery checked the notes with those described in it. There is no dispute that the deed which they examined there, and which at the trial was in Slattery's possession, is the same one which Lange carried away from the banking house of the plaintiff. When Lange met the discount committee and turned over to them the new deed of trust and notes for twenty thousand dollars, and they agreed to increase his loan six thousand dollars, and approved and accepted the notes and deed of trust, the obligation of the plaintiff became fixed and for a failure to perform, it might have been held liable in damages. Certainly it was so after they accepted the substituted securities, and it is equally certain that this obligation assumed was both a burden to the plaintiff and a benefit to Lange. The mere fact that Lange did not receive credit on plaintiff's books for the new discount until some days later, does not militate against this view, for there is nothing to show that he might not have enjoyed it sooner had he so desired. The promise of plaintiff to increase the loan and its obligation to do so were a sufficient consideration. [Story, Contr. (5 Ed.), 548; Given v. Corse, 20 Mo. App. 132; Bank v. Rice, 107 Mass. 37.] And this is so notwithstanding the fact that the formal execution of the promise was deferred until a later day. The liability to perform sprang up when the promise was made. As between Slattery and the plaintiff, the question whether there was a sufficient delivery by the grantor in the deed of trust to give it legal effect is wholly immaterial. Neither is in position to dispute it, and discussion of the question would not tend to shed any light on the issues in this case. Nor can it be said that Lange's acts after leaving the bank to record the deed of trust show a lack of intent on his part to consider his agreement with the plaintiff uncompleted. The plain answer to that argument is that plaintiff can not be

affected by any intent on his part of which it had no knowledge, and we find nothing in the evidence concerning conversation or dealings with the discount committee which tends to disclose any purpose contrary to that stated by him, to record the deed. Lange's official connection with the plaintiff as one of its directors is not of itself sufficient to charge the plaintiff with notice of his fraudulent purposes, if indeed he had at that time such a purpose. [Johnston v. Shortridge, 93 Mo. 227; Benton v. Bank, 122 Mo. 339.]

It is next objected that the plaintiff, by its negligence in permitting Lange to carry away the deed and in failing to get back the recorder's receipt for it, put it in his power to defraud Slattery and so ought to bear the loss which must fall upon one of two innocent parties. We are cited to a number of cases in which that doctrine, about which there is no dispute, was announced and applied, but in none of them do we find facts entirely like those of the instant case. Thus in Guffey v. O'Reiley, 88 Mo. 418, it was held that one who has title to land and knowing it, stands by and allows and encourages another to contract for its purchase from a third party in possession under color of title, will be estopped to set up his title against the party so purchasing, but it is obvious that in that case the decision was based upon the knowledge, on the part of the owner, of the conduct of him who committed the fraud, and in this case it is not even pretended that the plaintiff had any knowledge of the subsequent conduct of Lange.

And in Simpson v. Bank, 43 Hun 158, the deed intrusted to Bliss was a deed in fee conveying the property to him, in other words, the case was one in which a grantor intrusted a deed to the grantee before the consideration was paid and thus clothed him with the *indicia* of ownership.

In Preston v. Witherspoon, 109 Ind. 457, one party deposited wheat for storage with another and allowed him to mingle it with his own, knowing that he was publicly selling and shipping from the mass, and it was properly held that the

true owner, having conferred apparent ownership and authority to sell, was estopped as against an innocent purchaser, but here again, the decision turned upon element of knowledge, which is wholly lacking in the case at bar; and so it is with the other authorities cited on this point by defendants. None of them are in point.

A much different case would be presented had the plaintiff intrusted the notes to Lange instead of the deed of trust, but the deed did not of itself clothe him with the *indicia* of ownership of the debt it secured. It was the mere incident to the debt evidenced by the notes (Hagerman v. Sutton, 91 Mo. 531; Carpenter v. Longan, 83 U. S. 275), and when once recorded, its manual possession was not sufficient to raise the presumption of ownership, and the plaintiff was not within the rule of the cases cited, unless it might ordinarily have anticipated what in fact occurred. The recorder's receipt had no different effect, and although it may be true, as stated by some of the defendant's witnesses, that it is the custom among those engaged in the real estate loan business to use the receipt card in place of the deed of trust while the latter instrument is being recorded, the plaintiff, being in the banking business, is not chargeable with knowledge of that custom (Lawson, Usages and Customs, 45; Brown v. Strimple, 21 Mo. App. 338), and actual knowledge of it was not brought home to it or its officers who were acting for it. Without notes corresponding to those described in the deed of trust, Lange could not have secured the loan from Slattery; indeed it would be idle to pretend the contrary, but it was not due to any fault or neglect of the bank or its officers, that Lange was able to produce such notes, nor do we observe anything in the record indicating that they might have prevented it. The vice of defendant's argument lies in the fact that it assumes that the loan was made by Slattery on Lange's possession of the recorder's receipt, while in truth the notes were the real inducement and security. We agree with the referee that the plaintiff was not

guilty of any such neglect as would deprive it of its right to the security of the deed of trust as against Slattery.

The next contention of defendants is that where there are two sets of notes conforming to those described in the deed of trust, the possession of one set together with the deed by a purchaser for value is conclusive against the validity of the other, but we are not cited to any authority so holding. Counsel support their position on this point by the argument that a ruling to the contrary would be detrimental to the business interests of the State and would open the way to the perpetration of similar frauds. The argument, however, could more properly be considered by the Legislature than by the courts. A very much similar state of facts appeared in Kernohan v. Manss, 53 Ohio St. 118, where one Gill, the custodian of a mortgage securing a note in his own favor and others in favor of other persons, counterfeited the note owned by himself and sold the counterfeit and the mortgage to Kernohan. Afterwards he sold the genuine note without the mortgage to Manss. Upon the issue between the two purchasers, it was held that the latter was entitled to the security of the mortgage, a result quite opposite to that which defendants contend must follow the possession of one set of duplicate notes together with the mortgage.

So, too, in Morris v. Bacon, 123 Mass. 58, cited by the referee, it was held the possession of the mortgage and a note similar to that described in the mortgage, did not entitle the holder to the benefit of the security as against the pledgee of an identical note previously negotiated for value under the representation that it was secured by the mortgage. At best, the rule urged by the defendants' counsel could only be one of evidence, and could amount only to a presumption in the absence of positive evidence.

A full consideration of the case leads us to the conclusion that the plaintiff is entitled to the security of the deed of trust of July 12, 1892, and the decree below being for the right

party, we affirm it. *Burgess, C. J., Brace, Marshall, Valliant* and *Gantt, JJ.,* concurring; *Sherwood, J.,* dissenting. *Robinson, J.,* agrees the judgment should be affirmed, but not for the reasons stated in the opinion.