HENRY EATON, Appellant, v. J. R. CROWE COAL & MINING COMPANY, Respondent.

Kansas City Court of Appeals, January 22, 1912.

1. **SALES: Contracts: Breach: Damages.** Plaintiff's order for fifty cars of coal was accepted by letter which contained in the letter-head the following: "All orders and contracts subject to car supply, strikes, accident and causes beyond our control." Five cars only were shipped on this order, because defendant's contract to furnish coal to plaintiff and others was in excess of its production. Plaintiff had contracted to sell the coal as delivered and by reason of the failure to get coal from defendant, he was compelled to go on the market and buy coal, paying a greater price therefor. *Held*, that as defendant had committed a breach of the contract, plaintiff was entitled to a judgment for nominal damages, at least.

Appeal from Jackson Circuit Court.—*Hon. Hunt C. Moore,* Special Judge.

REVERSED AND REMANDED.

*J. S. Rust* and *Hamlin & Seawell* for appellant.

(1) The contract for this coal is admitted. It was unconditional and it is admitted that forty-five out of the fifty cars were not delivered; therefore the judgment should necessarily be for the plaintiff for some amount. Eaton v. Coal Co., 125 Mo. App. 194. (2) The cause printed in the left-hand corner of the letter-heads, all of which letters were written after the contract was entered into, was entirely irrelevant, immaterial and incompetent as evidence, and that .clause constituted no part of the contract, nor was the contract in any way modified by it. (3) The evidence is conclusive that the failure to supply the coal as per contract was because defendant's contracts to furnish that quality of coal to plaintiff and others (Abst. 43) was in excess of their supply and therefore the provisions of the clause in the corner of the letter-heads could not be material; nor for the same reason could the question of custom be material. (4) There is no evidence to show that plaintiff knew of any such custom as was claimed by defendant and plaintiff could not be bound by such a custom unless knowledge of it was brought home to him. Hoolan v. Bailey, 30 Mo. App. 585. (5) The fact that a certain firm has a certain clause printed on its letter-heads cannot make the matter stated in that clause into a custom. A custom is a rule of the trade and not a rule of an individual. Hoolan v. Bailey, 30 Mo. App. 585; Coquard v. Bank, 12 Mo. App. 192; Martin v. Ashland, 49 Mo. App. 43. (6) The contract having been in the name of Henry Eaton, he was necessarily the proper party plaintiff. Wolf v. Railroad, 97 Mo. 473; Harrigan v. Welch, 49 Mo. App. 496.

*Boyle, Guthrie & Smith* for respondent.

(1) The bill of exceptions was signed and filed out of time and can not be considered on this appeal. (a) The special judge had exclusive jurisdiction over the case, and the regular judge had no right to extend time of filing bill of exceptions. (b) The order made by the regular judge on September 14, 1911, giving appellant till November 15, 1911, to file bill of exceptions, was made without authority of law, and the bill of exceptions filed on October 23, 1911, was filed out of time. (c) Where the regular judge is unable to hold a term of court and a special judge is elected and holds the term, the regular judge has no authority to sign a bill of exceptions in a case tried by the special judge at a preceding term, but such bill of exceptions should be signed by the special judge. Ranney v. Packing Co., 132 Mo. App. 324; Martin v. Ins. Co., 124 Mo. App. 221; State v. Bobbitt, 215 Mo. 10. The court sitting as a jury also found as a fact (instruction 5) that there was no evidence as to the number of tons of coal defendant failed to deliver plaintiff; that there was no basis upon which the court could estimate damages even if plaintiff were entitled to damages. (2) The court sitting as a jury found that the evidence in the case showed that by the custom at Weir City, such orders as the one sued on were made subject to the car supply. The court declared the law as to the measure of damages to be, that there was no evidence in the case to support a finding, even if plaintiff had been entitled to such finding.

BROADDUS, P. J.—The plaintiff's action is for damages for the failure of defendant to deliver a certain number of car loads of coal as provided by its contract. The plaintiff was a resident and doing business at Springfield, Missouri, and the defendant is a Missouri corporation with head-quarters at Kansas City, Missouri.

The contract was made by correspondence through the mails in the following manner. The plaintiff made his order for coal through defendant's agent, C. J. Cease, which reads as follows:

"Order No. 233          Date, Sept. 11, 1902.
M.                       J. R. Crowe C. and M. Co.
Ship to                  Henry Eaton
At                       Springfield, Mo.
How Ship, ·              Frisco.
When                     As ordered during season not
                           to exceed one car per day.
    Terms——
        50 cars Weir Cy Lump at $1.75 F. O. B. mines.
C. J. Cease.                      Henry Eaton."

The order was accepted by the defendant by letter as follows:

"Kansas City, Mo., Sept. 13th, 1902. "Mr. Henry Eaton, Springfield, Mo.          ·

"Dear Sir:—We are in receipt of your orders Nos. 233 and 234, given our Mr. Cease, for fifty cars of Weir City Lump and two cars of Weir City Nut, for which we are greatly obliged. We wil see to it that good coal is furnished you and prompt shipment made of it." In the left-hand corner of the letter-head appears the following: "Sales based upon St. L. & S. F. R. R. Co's Weights. Quotations for present only, unless otherwise specified. Orders binding only when accepted in writing. All orders and contracts subject to car supply, strikes, accident and causes beyond our control. We do not guarantee Freight Rates." The defendant shipped five cars of coal and then ceased further shipments.

Defendant's evidence tends to show that the reason for its failure to make further deliveries of coal to the St. Louis and San Francisco Railroad, the carrier designated in the contract, was that the company

appropriated or confiscated all of its production of coal and refused to carry any for plaintiff. The excuse given by the railroad company was that it also had a contract with defendant to furnish it with coal, and, therefore, it appropriated it for its own use instead of delivering any part to plaintiff. The evidence of defendant, however, tends to show that one reason for the failure to comply with the contract was that it did not have a sufficient production of coal to fill its contract to furnish coal with plaintiff, the railroad company and others. Plaintiff made numerous demands on defendant to furnish him coal under his contract, but the letters of defendant in answer to these demands almost invariably are to the effect that the railroad company was appropriating all the coal defendant had on hand to apply on its contract. A letter of W. C. Smith, general agent of the railroad company, to plaintiff gives as a reason for the failure of defendant to deliver coal to plaintiff that the coal company had contracted to furnish his company with a certain number of cars of coal daily, and before permitting them to bill coal commercially it was required to fill the orders of the railroad company. Buchanan, one of defendant's officers, testified that, for twenty or thirty days he could not get cars to ship coal to plaintiff, but that at other times it was the inability of the defendant to supply the coal and not the inability to obtain cars for shipment.

The plaintiff had contracted with various persons to supply them with coal and by reason of the failure to get coal from the defendant he was compelled to go on the market and buy coal for which he paid in excess of the price his contract with defendant called for. There was evidence tending to show that the plaintiff had knowledge of the custom of trade in matters of transportation which appeared in said letter-head, and that plaintiff had transacted similar business with the defendant prior to the date of the order in ques-

tion by means of orders of the character in question with the same conditions attached.

The cause was tried by the court without the intervention of a jury. The finding and judgment were for the defendant from which the plaintiff appealed. The plaintiff asked nine declarations of law, all of which the court refused, except one, which it is not necessary to consider, and gave various declarations asked by the defendant. The declarations given for defendant indicate that the court's view of the issues was that the contract in suit was a conditional one, that is to say, that the defendant was excused for non-delivery of the coal on the ground that it was prevented from so doing by causes beyond its control.

The contention of plaintiff is that the contract was unconditional, that the writing in the letter-head of the letter accepting plaintiff's order constituted no part of the contract. It will be seen that there is in said writing the following, "all orders aand contracts subject to car supply, strikes, accident and causes beyond our control." Taking into consideration the trade custom in such cases, and the prior dealings between the parties, we think it should be held that plaintiff contracted with the understanding that the order for coal was accepted upon the condition that the order was subject to car supply and causes beyond the defendant's control. The contention of appellant is that a custom is a rule of trade and not a rule of the individual. Generally speaking, that is true, but a person entering into a contract may be bound by the usage of a particular business when he is acquainted with it. [Martin v. The Ashland Milling Co., 49 Mo. App. 23; Walsh v. Transportation Co., 52 Mo. 434; Brown v. Strimple, 21 Mo. App. 338; Lawson on Usages and Customs, sec. 51.]

And it is contended by appellant that the evidence is conclusive that the failure of defendant to supply coal was because defendant's contracts to furnish a

quanity of coal to plaintiff and others was in excess of the production, therefore, the conditions of the clause in the letter-head were not material. This contention is well founded. The uncontradicted evidence shows that defendant's reason for not shipping plaintiff coal was not because the railroad would not ship coal to him, but because the supply was applied to its contract with the railroad.

The following finding of the court was not supported even by the evidence of defendant. "The court declares the law to be that defendant's failure to deliver coal to plaintiff as provided by the order in question, was due solely to the fact of shortage in cars, and not to a shortage in coal." How the court could have come to such a conclusion in the face of the most positive evidence we are at a loss to understand. There being no evidence of the number of tons of coal defendant failed to deliver, there was no basis upon which the court could estimate plaintiff's damages, if any, and the court so declared. But as it was shown that defendant had committed a breach of the contract, he was entitled to a judgment for nominal damages. Ordinarily, in such cases, if the plaintiff fails to show that he has suffered no damages by reason of the defendant's failure to comply with his contract perhaps it would not justify a reversal. But this case is different. There can be no doubt but what the evidence did show that plaintiff was greatly damaged by defendant's failure to furnish coal contracted for, but he failed to show the extent or the amount of such damage. Therefore, in order that justice may be done, we will give the plaintiff the benefit of his right to recover on the proof some damages, however small, and reverse the cause so that in another trial he may present the necessary proof to sustain his case, and thus prevent a slip of justice. In so doing, we are also persuaded that we are within the letter of the law. All concur.